here the debt due from Simple to the defendants was not contracted in contemplation of these lands; and the case is thus materially varied.

The court said, that the plaintiff was entitled to one fourth part of the proceeds of the lands as well on principle as precedent, and directed.

Judgment for the plaintiff.

---

ALEXANDER DURDON executor of ANNE DURDON late ANNE PENN, who was executrix of SPRINGET PENN, who was executor of WILLIAM PENN (the third ) *against* CHRISTIANA GULIELMA GASKILL.

A legacy or trust is not within the statute of limitations; but after a length of time payment will be presumed; yet such presumption may be rebutted by other circumstances. *Indebitatus assumpsit* will not lie for a legacy against an executor. Aliter against a devisee who receives money belonging to another legatee.

*Indebitatus assumpsit* for 820l. 10s. 10½d. received by the defendant, for the use of William Penn (the third) in his life time. Pleas *non assumpsit* and payment, and *non assumpsit infra sex annos*.

Replication to the second plea, *non solvit* and issues. Also, to the last plea, that the sum demanded was a legacy, and the money received in trust and fraudulently concealed from the plaintiff, and those whom he claims.

Rejoinder, that the defendant did not prove the will of the said William Penn, (the third) as his executrix, nor receive the legacy in trust, nor fraudulently conceal the same.

Surrejoinder and issues.

This cause came on to trial at the last December term, when the following facts appeared in evidence.

Letitia Aubrey, daughter of William Penn (the first) became entitled to 5000 acres of land in Chester county, called Sir John Fag's manor, by patent, bearing date 16th May 1737; and on the 3d April 1740, she executed a letter of attorney to James Logan and William Logan, to sell and make conveyances of all her lands in Pennsylvania and the lower counties in Delaware.

Letitia Aubrey by her will duly proved, bearing date the 20th July 1744, devised her lands to her nephew William Penn, (the third) son of William Penn (the second) during life, remainder to the defendant her daughter in fee; and all her personal estate

to the said William Penn (the third) and his daughter Chirstiana Guliclma (the defendant) equally to be divided between them ; and appointed her said nephew, the defendant and Jane Lomb her executors.

William Penn (the third) by his will duly proved, bearing date on the 17th October 1743, after giving several legacies, devised all the residue of his estate real and personal to his son Springet Penn, whom he nominates his executor, and afterwards died on the 6th February 1746.

The lands within Fag's manor having been sold by James and William Logan, in the life-time of Letitia Aubrey, but the moneys not being paid, nor the conveyances given to the purchasers, the defendant on the 5th March 1755, executed a letter of attorney to William Peters and Richard Hockley to sell and convey all her lands in Pennsylvania, and remit the moneys arising therefrom, due since the death of her said father, to his great uncle Thomas Penn in London.

On the 2d June 1759, letters of administration with the will of the said William Penn (the third) annexed, issued to Thomas Devonshire curator and guardian of the said Springet Penn, who came of age in 1762, and by his will duly proved, bearing date the 1st December 1762, devised all his estate real and personal, to his mother Anne Penn, whom he nominates his execrutrix.

The said Anne Penn intermarried with the Plaintiff, but previous thereto, on the 20th February 1767, marriage articles were executed between them, whereby his right of disposing of his lands in Pennsylvania by her last will was reserved to her. And in pursuance of the power of appointment, the said Anne by her last will duly proved, bearing date the 11th March 1767, devised all her estate real and personal to the plaintiff her husband, who survived her

The defendant was born on the 28th October 1733, and on the 14th August 1761 intermarried with ——— Gaskill, and survived him.

It appeared by the books of accounts kept by Peters and Hockley, that they had received 1641l. 1s. 9d. under their power to sell and convey Fag's manor, and that they had remitted the same to Thomas Penn, agreeably to their instructions, the last remittances having been made on the 27th May 1761. For one moiety thereof the present suit was brought.

Three principal exceptions were taken to the plaintiff's recovery, at the trial.

1st. No cause of action ever existed in William Penn (the third) and consequently there could be none in his executor. He

died in 1746, during the defendant's minority, and his letter of attorney under which the money was received, was not given till 1775. If the suit was at all supportable, the plaintiff should have declared for money received for the use of Springet Penn. But this objection was waived on the argument; and the defendant's counsel agreed that the record should be amended, in order to correspond with the proofs made.

2d. The staleness of the demand. On this point it was insisted, that it is the policy of every civilized country to discourage actions, founded on transactions which have happened long before. The English law lends no assistance in such cases. 3 Bla. Com. 188. The limitation of suits is founded in public convenience, and therefore adopted by chancery as a positive rule. 2 Burr. 961. Courts of law and equity will raise a strong presumption in favor of a possession of 21 years. 2 Atky 67, 71. Though the statute of limitation be not pleaded, yet it shall apply to a stale demand. 1 Atky. 494. Forbearance to sue for 20 years, is a good bar between merchants. Gilb. Equ. Rep. 224. Every presumption shall be made in favor of an ancient possession. After a long acquiescence, the jury are warranted to presume any thing. Cowp. 215, 210. After 20 years possession no information of *quo warranto* shall impeach the right of a corporate body. 4 Burr. 1953. And after such a possession and two conveyances made of the lands, court will not inquire, whether the vendor was *non compos*. 1 Equ. Ca. Ab. 306, pl. 3. 1 Cha. Rep. 40. A legacy shall be presumed to be paid after 20 years. 1 Equ. Ca. Ab. 307, pl. 9. 2 Vern. 21, 484. An infant shall not even file a bill in equity, six years after his coming of age. Equ. Ca. Ab. 304, pl. 10. No evidence has been given of any willful or fraudulent concealment by the defendant. It does not appear, that she ever acted as one of the executors of her grand-aunt Aubrey, or proved her will. She was a minor at her death. The plaintiff and those under whom he claimed must have been conusant of their right, and most probably have received satisfaction for all the lands comprised within the bounds of Fag's manor, contracted for in the life-time of Mrs. Aubrey, though it may be impracticable to prove the payment, after so great a lapse of time.

To this the plaintiff answered. It is admitted that the statute of limitations is pleadable in equity, as well as at law, to an ancient demand; but numerous cases have ascertained, that a deposit or trust is not within the statute. Gilb. For. Roman. 61. 2 Wms. 145. 2 Vent. 345. March 129. Equ. Ca. Ab. 303. 3 Bac. 510. Neither is a legacy within the statute. The length of time is only a presumption of payment. 1 Vern. 256. The voluntary

and fraudulent concealment of a deed will prevent the statute's barring. 2 Equ. Ca. Ab. 579, pl. 9. And no length of time will bar a fraud. Forrest. 63.

The presumption of payment necessarily cannot hold, where the party is not conusant of his rights. The agents of Mrs. Aubrey, and also of the defendant, resided in Pennsylvania; the plaintiff and those under whom he claims, were beyond sea, in Ireland. How could the latter have access to the books of the former? In what manner could the latter receive information of the sums received by Peters and Hockley, unless through the medium of the defendant, their constituent? It is highly probable that she entertained the opinion, that the lands within Fag's manor, for which conveyances were made by her attorneys, were to be considered as the real estate of her grand-aunt, and the same vested in her as remainder-woman. But the books of James and William Logan show, that these lands had been contracted for during the life of Letitia Aubrey, and must therefore be deemed a part of her personal property, and distributable as such under her will. The defendant was a mere trustee holding the legal estate, and trusts either express or implied, are not barrred by the statute.

The court gave it in charge to the jury, that the statute of limitations did not apply. Under the circumstances of this case, it could not be pleaded in bar at law, nor by way of answer in equity. But a presumption of payment arose from the lapse of time since 1761. Springet Penn died within the first year of his full age. Anne Penn his mother and advisee, married in 1767. The knowledge of the sums received by the defendant's agents was not acquired by the plaintiff's attorneys in fact, until 1775, when the revolutionary war broke out, and the free intercourse between the two countries was interrupted. These were circumstances which went to rebut the legal presumption; and what operation they should have, came fully before the jury for their consideration.

The jury gave a verdict for the plaintiff for 1312*l.*

3. The form of the action was the last exception. This was the ground of the present argument, the point being considered as reserved.

The defendant insisted, that this in effect was a suit for a legacy, and the plaintiff to get over the limitation act has applied, that the money demanded was claimed as such. No action lies at common law for a legacy, but the remedy is by a bill in equity. 5 Term Rep. 692. Peake 73. 1 H. Bla. 109. The act of

21st March 1672,( 1 Dall. St. Laws, 931,) provides an adequate remedy in this state, and points out certain preliminary steps to the institution of such actions. Under the 4th section of this law, no suit shall be maintained for a legacy, until reasonable demand made of the executors, and an offer of two sufficient sureties in a refunding bond, which is to be filed with the clerk of the court, before obtaining any process ; in default whereof, the process issued, shall abate. Instead of this demand and refunding bond, the plaintiff has not declared against the defendant even as an executrix, though it cannot be denied, that she was the surviving executor of Letitia Aubrey, and the plaintiff claims under that will. It has often been determined, and particularly in a late case at Northampton assizes between Bailey v. Johnston, that *indebitatus assumpsit* will not lie against an executor for a legacy.

*E contra*, the plaintiff contended, that this action was not brought against the defendant as executrix, and she has expressly rejoined that she did not prove the will. If it had been intended to support the suit against the representatives of Letitia Aubrey, it would have been brought against the executors of Jane Lomb, or the administrators *debonis non administratris* of Letitia Aubrey. Though the general rule is correct that *indebitatus assumpsit* for money had and received will not lie for a legacy, yet if one executor should receive more than his proportion of the surplus, the only suit which could be supported by the other co-executor, would be in this mode. And if the suit had been brought by William Penn, (the third,) in his life-time, for moneys overpaid to the defendant, he would not have been obliged to tender a refunding bond, though he claimed under the will of his aunt. Here, though the plaintiff's demand derives its origin under the will, yet the defendant is not charged as an executrix, nor in fact, did she ever act in that capacity. The action presupposes, that in her capacity as devisee, she had received the whole sum arising from the sale of lands in Fag's manor, whereas under the existing circumstances, she was only entitled to a moiety thereof, and the jury have found accordingly. Consequently, the money was paid to her by mistake, for which *indebitatus assumpsit* will lie.

The court said, the present action was not brought against the defendant as a surviving executor for a legacy, in which case clearly a refunding bond should have been tendered in the first instance ; but it was brought against her as a devisee, who re-

ceived money in trust for Springet Penn, to which she had no just claim : and awarded

Judgment for the plaintiff.

Messrs. Lewis and Wilcocks, *pro quer.*
Messrs. Tilghman and Rawle, *pro def.*

---

WILLIAM SHEAFF, JOHN MORRELL and JOHN EVANS, assignees of GEORGE GRAY, junior, and ROBERT GRAY, bankrupts, *against* GEORGE GRAY, senior.

Where a party delivers a paper to the jury without consent or the leave of the court, and a verdict is found for him, a new trial shall be awarded.

A VERDICT was given for the plaintiffs for 3137*l.* 8*s.* 11*d.* at the last sittings, on the 12th March instant.

On a rule to show cause why a new trial should not be granted, it appeared that a paper was delivered to the jury, containing an account of expenditures respecting a house built on the lands of defendant, said to be with the knowledge of the defendant, referring to the bankrupt's books and their several pages, without the consent of the adverse counsel. The books were not delivered to the jury, and the accountgiven to them, varied from that before furnished to the defendant.

On the part of the plaintiffs it was admitted, that a material paper delivered to the jury, which had not been read in evidence, without consent, was good ground for a new trial ; but this paper was said to be a mere estimate of the costs incurred on the house, and any person may state his demand in writing and send it out with the jury, by way of calculation, without consent.

By the court. This paper cannot be called an estimate or calculation. It goes to substantiate the demand of the plaintiffs. It is a dangerous precedent, and may lead to ill consequences, though we do not suppose there was any intention here of doing wrong. All the cases agree, that a party delivering papers to the jury, without consent or the leave of the court, a new trial shall be granted. 5 Bac. 291. We know not what effect this paper may have produced in the minds of the jury ; but we well know, they should not have had it delivered to them. Solely on this ground, and without expressing our sentiments as to the merits of the case, a new trial is awarded.

Messrs. Lewis, Tilghman and Porter, *pro quer.*
Messrs. Ingersoll and Rawle, *pro def.*