# Foulk *against* Brown.

2w209
188  465

2 W    209
20 SC  285

2 W    209
25 SC  ²510

2 W   209
215       551

2w    209
f37SC  ³324

In an action against an executor in his representative character, by a legatee to recover a legacy, the defendant may appeal from an award of arbitrators without the payment of costs.

The only effect of the settlement of an administration account in the orphan's court is, to show the balance of assets in the executor's hands after the payment of debts and charges, and can have no bearing upon the amount due to legatees, or to repel presumption of the payment of a legacy which arises from lapse of time.

After a lapse of twenty years, all evidences of debt, excepted out of the statute of limitations, are presumed to be paid.   Within the twenty years, the *onus* of proving payment lies in the defendant: after that time, it devolves on the plaintiff to show the contrary.

The rule in regard to the statute of limitation, that when time has begun to run, it suffers no interruption from the occurrence of circumstances that would otherwise prevent its application, does not apply to the case, of a legal presumption from lapse of time.

A citation to executors, to appear in the orphan's court and settle their administration account, issued at the instance of the legatee, within twenty years from the time a legacy becomes payable, is a claim of such legacy by legal proceeding, and a bar to the presumption of payment.

The death of a *feme covert* legatee, whose husband survived her, and that no administration was taken upon her estate, are not such facts as will repel the presumption of payment of the legacy which arises from lapse of time.

Though the recovery of a legacy payable upon the death of the testator may be barred by lapse of time, yet a residuary bequest in the same will, legally prosecuted, within twenty years, may be recovered.

ERROR to the common pleas of *Cumberland* county.

Action of debt by Lewis Foulk, administrator of Isabella Foulk deceased, against Thompson Brown, executor of William Brown, Sen. deceased,· to November term 1829.   The following declaration was filed, 'and exhibits the plaintiff's cause of action, and the dates of the material facts which gave rise to the questions of law, except that Lewis Foulk presented a petition to the orphan's court in 1827, for a citation to Thompson Brown to settle his administration account.

Cumberland county, *ss.*   T. Brown, late of said county, *executor of the last will of William Brown, Sen. deceased,* was attached to answer L. Foulk, administrator of all, &c. of Isabella Foulk deceased, of a plea, that he render unto him 3749 dollars 65 cents, which to him *he owes, and unjustly detains, &c.*; and thereupon the said L. Foulk by, &c., complains, that whereas the said William Brown deceased, in his lifetime, viz. 3d of April 1802, at said county, made his last will and testament in writing, bearing date the same day and year, and thereby, among other things, did will, bequeath and direct, that after payment of his debts, funeral expenses and specific

II.—BB

bequests, *the residue* of his cash and moneys arising from his bonds and other debts, and from the sales of his personal and real estates, be equally divided to and amongst his wife, M. Brown, and all his children, viz. his sons, Arthur, William, George and Thompson, and his daughters, Isabella (the plaintiff's intestate) and Lucy, saving only the difference occasioned by certain deductions, viz. the shares of his wife M., his son T. and his daughter L., to be equal and alike; his son A. to have 300 pounds less than either of them; William's share to be less than theirs by the sum of 200 pounds; George's to be less by the sum of 100 pounds; and the said Isabella's to be less than theirs by the sum of 250 pounds; and further, that by the said bequest to his wife, it was not his intention that she should have the absolute property in and disposal of the same; it being his meaning only that she should have the *interest of the money* during her natural life, and that the principal, or such part as may remain *at her death,* be divided, on her decease, equally amongst all his children, or their respective heirs, viz. his sons A., W., G. and T., and his daughters I. and L., share and share alike. And, of his said will, appointed the same *Thompson Brown and William Brown and James Duncan the executors,* as by the said will, &c. And the said Lewis, in fact, saith, that afterwards, viz. 18*th of May* 1802, at said county, *the said William Brown, Sen.,* died, and the said *Thompson Brown, William Brown, Jun. and James Duncan,* then and there duly *proved the said will,* and took upon themselves the burthen of the execution thereof, and possessed themselves of the personal and real estate of the said testator, and proceeded to sell the goods and chattels, lands and tenements of the said testator, and received the prices thereof, and collected the moneys due to the said William Brown, Sen. at the time of his death. The said William Brown, Jun. has since died, and the said James Duncan has removed from and left the state of Pennsylvania, and has relinquished and abandoned the administration of the estate of the said testator. And the said Lewis further saith, *M. Brown, the widow of the said testator, died on the* 18*th of May* 1808, having received no part of the principal sum of the said legacy so bequeathed to her; and also that the said Isabella Foulk was the daughter of the said testator, and one of the legatees named in said will, and died on the 1st of January 1804; and letters of administration on her estate issued to the said Lewis on the 7th of May 1827. And the said Lewis further saith, that the said T. Brown, as such executor, did exhibit in the register's office of said county, his *account of his administra*-tion of the estate of the said testator, which account was examined and passed by the said register, on the 12th of January 1828, and was allowed and confirmed, agreeably to law, by the orphan's court of said county, on the 13th of February 1828, by which account it appeared, that there was a balance of the assets of said testator, in the hands of the said Thompson, as such executor, amounting to 27,123 dollars 67 cents, which sum the said court then and there

[Foulk v. Brown.]

ordered and decreed to be distributed, according to the said will. And the said Lewis further avers, that the proportion and part thereof, so as aforesaid bequeathed to the said Isabella, and due and payable to him as her administrator, agreeably to the said will *and decree*, does amount to the aforesaid sum of 3749 dollars 65 cents, lawful money, together with interest thereon from the said 13th of February 1828, of all which the said Thompson, on the day and year last aforesaid, had notice : nevertheless, the said T., although often required so to do, hath not paid the said sum of 3749 dollars 65 cents, nor any part thereof, to the said Isabella, in her lifetime, nor to her said administrator since her death ; but the same to pay hitherto hath refused, and still doth refuse, to the damage of the said Lewis 8000 dollars, and therefore he brings suit, &c."

And, on the same day, rule of arbitration entered by plaintiff, under the arbitration law. On the 13th of January 1830, arbitrators were appointed by the parties, who reported, on the 10th of March 1830, that they did find for plaintiff 4215 dollars 85 cents, with costs, which was filed, and judgment *nisi* entered thereon, on the same day. On the 24th of March 1830, the following entry was made on the said docket of said suit. "I appeal from the award of arbitrators, rendered in this suit," signed, "Thompson Brown, executor of William Brown, Sen." 13th of April 1830, on motion of Mr Carothers, rule to show cause why the appeal entered by defendant should not be stricken off. 14th of May 1830, rule discharged by the court. The defendant pleaded payment with leave, and plaintiff replied *non solvit* and issue. 19th of January 1832, tried and verdict for defendant.

The defendant's counsel rested their defence upon the lapse of time which had occurred from the time the legacy was payable, until suit was brought.

In answer to this, the plaintiff said that the settlement in the orphan's court in 1828 was conclusive of his liability to pay ; that there were items of charge in the account which were dated within twenty years from the commencement of the action ; that there were items in it without date ; and that the residuary bequest to the plaintiff's intestate was not payable until the death of the widow in 1808, and the citation to T. Brown was issued within twenty years from that time.

The court below charged the jury that the settlement in the orphan's court was conclusive of every thing which it purported to settle, but not of liability to heirs :—that if there were items of charge in the account received within twenty years from the commencement of this suit, the presumption of payment would not arise as to them. That the items without date were referable to the jury on the same grounds :—that inasmuch as more than twenty years had elapsed from the death of the widow until this suit was brought, the presumption of payment did arise as to the legacy payable at her death.

[Foulk v. Brown.]

The jury rendered a verdict for the defendant.

*Alexander* and *Carothers*, for plaintiff in error.

The settlement in the orphan's court, and the decree of distribution according to the will, were conclusive of the accountant's liability, and the presumption began to run only from that time : but at all events there were charges in the account against the executor which bore date within twenty years from the time when the citation issued; and the issuing of a citation within twenty years, was the commencement of a legal claim. The legacy payable upon the death of the widow, was legally demanded within twenty years. *Purd. Dig.* 564, *tit. Legacy; Ibid.* 666, *tit. Orphan's Court; Ibid.* 669, No. 13 ; *Ibid.* 671, No. 19 ; 2 *Rawle* 301. Thompson Brown having settled an administration account in the orphan's court, by which a balance was found to be in his hands, which the court decreed he should pay to the legatees; this action was brought to enforce that decree, and was necessarily against him personally, and calling him executor was a mere description of the person. If, then, the action was in fact against him personally, to recover that which was owing by him, and not by the estate of his testator, it would not be within either the letter or spirit of the act of assembly that he should have the right to appeal without paying costs. 8 *Serg. & Rawle* 402 ; Selby *v.* Dailey, 2 *Serg. & Rawle* 548 ; Wilson *v.* Wilson, 3 *Binn.* 557.

*Watts,* for defendant in error.

The settlement of an administration account by the orphan's court, is an exhibition of the amount of the estate and of the debts and expenses of administration paid out of it, and does not at all involve the question of payment to the heirs. The question, then, in this case being as to the legal presumption of payment from lapse of time, that which did not involve the fact could neither raise or repel the presumption. M'Lean *v.* Finlay, 2 *Penns. Rep.* 97. The computation of time begins when the right of action accrues. Diermer *v.* Sechrist, 1 *Penns. Rep.* 420. The citation to the executor to settle his account was not a legal demand of the legacy, because no such suit could result from it, nor could the question of payment arise in any stage of the proceeding upon it. It called upon the executor to account, which he did : and the account itself certainly does not repel the presumption that the legatees were paid. This action was a legal demand, and had no connection with the citation or other proceedings in the orphan's court. The defendant had a right to appeal without the payment of costs. The writ was against him as executor : the *narr.* is against him as executor, and avers the death of one executor : the will is set out : a refunding bond given to him as executor : and no part of the declaration lays any promise by the defendant to pay. It is the policy of the law to encourage appeals, that the party may have the benefit of a jury trial.

[Foulk v. Brown.]

The opinion of the Court was delivered by

SERGEANT, J.—The first error assigned is, that the court erred in sustaining the appeal of the defendant, entered without oath or bail. The appeal was entered in this manner under the proviso in the fourteenth section of the act of the 20th of March 1810, that where executors or administrators may be the party appellant, they shall have an appeal as is by law allowed in other cases. The construction of this proviso has been, that they may enter their appeal without oath, without payment of costs, and without recognizance in the nature of special bail. Insurance Company of Pennsylvania *v.* Hewes, 5 *Binn.* 508. But the plaintiff contends that the proviso applies only where the executor is sued as such, and not where the claim is against him personally : and that this action for a portion of the residuary bequests under the will, is against the defendant personally, and not as executor. It is certain that a distinction prevails in many important respects, between suits brought by or against executors in their individual and their representative capacities. And if the suit were clearly against the defendant in the former character, there would be great reason why he should not be permitted to avail himself of the privilege of appealing without a compliance with the usual terms. It seems to have been thought in Durdon *v.* Gaskill, 2 *Yeates* 268, that an action for a legacy could not be brought against an executor individually ; but in Clarke *v.* Herring, 5 *Binn.* 33, it was decided that it might. The declaration in the latter case was a special *assumpsit*, alleging a promise to pay in consideration of assets having come to his hands. But in Morrow *v.* Brenizer, 2 *Rawle*, it was decided, that *assumpsit* for money had and received would lie against an executor personally for the plaintiff's share of a residuary bequest of personal estate, and proceeds of real estate, in conformity with Wilson *v.* Wilson, 3 *Binn.* 55, in which it was held, that *assumpsit* for money had and received lies against an executor in his individual capacity, for a share of personal estate undisposed of by will ; still the plaintiff may sue the executor as such, and seek a recovery, in the first instance, *de bonis testatoris*, proceeding afterwards, on the return of *nulla bona*, to obtain an execution *de bonis propriis*, on the ground of a *devastavit*. It is not pretended that he is *obliged* to sue the defendant personally to recover a legacy. The action here is in debt. It is, in some respects, a charge against the executor in his individual capacity. It was commenced by *capias*, and special bail entered, and the declaration is in the *debet* and *detinet*. But in other material features, the suit is against the defendant as executor. The action is so entitled. The declaration in its commencement avers, that the defendant was attached as executor: it recites the will, and appointment of three executors, and accounts for the nonjoinder of the other two by alleging one to be dead, and the other absent from the state. After setting forth that assets had come to the defendant's hands as such executor, and the amount of the plaintiff's proportion, it omits to state that the defendant thereby

became liable to pay. If the declaration were ambiguous, the construction ought to be against the party whose pleading it is—more especially where such construction goes to preserve the trial by jury; on which account the court has always leaned towards a liberal construction in favour of an appeal in doubtful cases. Jones v. Badger, 5 *Binn.* 462. I am, therefore, of opinion that, in this case, the defendant is within the privilege conferred by the proviso, and that the court below did right in sustaining the appeal.

The counsel for the plaintiff prayed the court to charge the jury, that the decree of the orphan's court was conclusive. The answer of the court seems to me to define with accuracy the effect of such a decree. The orphan's court has not hitherto possessed jurisdiction to entertain a suit for a legacy, or to settle the accounts between the executor and the legatees, and, therefore, its decree could have no bearing on the question as to the amount due to the legatee. Its only effect is to show the balance of assets in the executor's hands after payment of debts and charges. The right to sue for a legacy is vested by the act of the 20th of March 1772, in the courts of common law, and to them is given power to appoint auditors to distribute the assets among the legatees, where they are insufficient to pay the whole of the debts and legacies. In this, therefore, there is no error.

The third error assigned relates to the circumstances which went to repel the presumption of payment arising from length of time. The circumstances relied on by the defendant were various. They consisted of the citation and other proceedings in the orphan's court; the omission of dates on the administration account, made out and sworn to by the defendant; the long period during which there was no administration taken out on the estate of Isabella Foulk, the legatee; the receipt of part of the moneys claimed within less than twenty years before this suit was brought.

It appears that the testator died in May 1802, and Isabella Foulk in 1804. The widow died in May 1808. The plaintiff took out letters of administration to his late wife, Isabella Foulk, on the 7th of May 1827; and, on the 8th of May 1827, presented a petition to the orphan's court for a citation to compel the defendant to settle his accounts; which were accordingly passed, and confirmed on the 13th of February 1828, finding a large balance against him as executor, and decreeing it to be distributed according to the will. The legacy was payable in May 1803, being one year after the testator's death.

Legacies not being within the statute of limitations, fall within the rule of presumption. After a lapse of twenty years, bonds and other specialties, merchant's accounts, legacies, mortgages, judgments, and indeed all evidences of debt excepted out of the statute, are presumed to be paid. 1 *Fonb. Eq.* 329; *Gilb. Eq. Rep.* 224; Bickley v. Richards, 13 *Serg. & Rawle* 402. The court will not encourage the *laches* and indolence of parties, but will presume, after a great length of time, some composition or release to have

been made. *Fonblanque's Equity* 329. This length of time does not operate as a positive bar, but as furnishing evidence that the demand has been satisfied. Eldridge *v.* Knott, *Cowp.* 211. But it is evidence from which, when not rebutted, the jury is bound to draw a conclusion, though the court cannot. Crist *v.* Brindle's Executors, 2 *Penns. Rep.* 262. Within the twenty years, the *onus* of proving payment lies on the defendant: after that time it devolves on the plaintiff to show the contrary, by such facts and circumstances as will satisfy the minds of the jury, that there were other reasons for the delay of the prosecution of the claim than the alleged payment. And if these facts are sufficient satisfactorily to account for the delay, then the presumption of payment, not being necessary to account for it, does not arise. Slighter circumstances are sufficient to repel the presumption than are required to take the case out of the statute of limitations; the latter being a positive enactment of the legislature, the former merely an inference on which legal belief is founded. The rule in regard to the statute of limitations, (a rule which applies to executors and administrators as well as others—*Gwill. B. Ab.* 479; *Willes* 27) that when the time was begun to run, it suffers no interruption from the occurrence of circumstances that would otherwise prevent its application, does not, it is said, apply to the case of a legal presumption. 16 *Johns.* 214. Still the circumstances, whatever they may be, must account in some reasonable way for the lapse of time, without demand or suit. The party's ignorance of his right; his disability to sue during a portion of the time, owing to the prevalence of a war; 2 *Yeates* 268; 10 *Johns.* 210; 16 *Johns.* 214; 2 *Cranch* 184; and, it is said, a writ sued out against the party really liable, though not arrested, or an imperfect writ, if the party were arrested; absence from the country during the last twenty years; *Ib.*; Quince *v.* Ross, *Taylor* 155; a demand without suit, and generally, any circumstance explaining satisfactorily why an earlier demand has not been made; 1 *Phil. Ev.* 119; 1 *Fonb. Eq.* 332.

The rule of presumption, when traced to its foundation, is a rule of convenience and policy, the result of a necessary regard to the peace and security of society. No person ought to be permitted to lie by whilst transactions can be fairly investigated and justly determined, until time has involved them in uncertainty and obscurity; and then ask for an inquiry. Justice cannot be satisfactorily done when parties and witnesses are dead, vouchers lost or thrown away; and a new generation has appeared on the stage of life, unacquainted with the affairs of a past age, and often regardless of them. Papers which our predecessors have carefully preserved, are often thrown aside, or scattered as useless by their successors. It has been truly said, that if families were compelled to preserve them, they would accumulate to a burthensome extent. Hence statutes of limitations have been enacted in all civilized communities; and, in cases not within them, prescription or presumption is called in as an

[Foulk v. Brown.]

indispensable auxiliary to the administration of justice. Courts of equity consider it mischievous to encourage claims founded on transactions that took place at a remote period.. 2 *Sch. & Lef.* 71. It therefore grants no relief after a great length' of time. *Ib.* In a word, the most solemn muniments are presumed to exist, in order to support long possession; the most solemn of human obligations lose their binding efficacy, and are presumed to be discharged, after a lapse of many years.

In the present case, twenty-five years and upwards had elapsed from the time when the legacy was by law payable, viz. May 1803 to the institution of this suit in October 1829. The circumstances relied on by the plaintiff to prevent the raising of this presumption are various, and it is in respect to these that the opinion of the court below is excepted to.

The first circumstances are the settlement of the administration account in February 1828, and the citation and other proceedings in the orphan's court. The mere settlement of the administration would not be an admission that the legacy was not paid. The executor may have paid all the bequests, and yet be compellable to settle an account. That is a duty imposed by law, which any one possessing the character of legatee, or party in interest, has a right to enforce. The orphan's court, on application for process to compel such settlement, could not inquire whether the legacy had been paid or not. It was declared by this court, in M'Lean *v.* Findley, 2 *Penns. Rep.* 100, that filing such account would not tend to repel the presumption; because it does not, in any way, admit a liability to distributees; nor, for the same reasons, does it as to legatees. Connected with the citation, however, the proceeding is of a different character. A citation is a process to enforce the'payment of the bequest. It is true the party may, under the legacy act, sue in a court of common law, and recover his proportion of the-residuary bequest. But the usual, and perhaps most convenient way is, first to ascertain by a settlement in the orphan's court the amount in the executor's hands, and then bring an action for the plaintiff's proportion; and therefore, the citation within twenty years to settle such account, duly prosecuted, is a claim by legal proceeding, and a bar to the presumption. Lapse of time shall not prejudice a person who has'title, while seeking a discovery of that title from persons in possession of the evidences of it. 1 *Sch. & Lef.* 42, 413. If this citation had been taken out by the legatee within twenty years from the time at which the bequest was payable, it would be sufficient. That, however, was not the case, except as to the sum payable after the widow's death; and therefore, as to all but that, is of no avail.

The second circumstance relied on, is the omission of dates in the administration account, as made out and sworn to by the defendant. This is not a fact from which we can infer any thing. The court below say very properly, that if there were objections to this form, they should have been made when the account was presented and

investigated.   We are not now inquiring into suppression or fraud, nor are we to presume them : we must judge from the account as it is ; and the absence of dates furnishes no fact from which a conclusion can be drawn for or against the payment.

The third circumstance relied on by the plaintiff, is the want of administration being taken upon the estate of Isabella Foulk.  From the death of Isabella Foulk in 1804, to the year 1827, a period of about twenty-three years elapsed, during which there was no administration to her estate, and it is insisted that this is a circumstance to repel the presumption of payment.   But it is to be observed that the bequest was to the plaintiff's wife, and the legacy was therefore, in effect, his property.   He was entitled, during her lifetime, to demand and receive it, and if not paid, to sue for and recover it.   The case is clear, for that period, of any circumstance that operates to rebut the presumption.   Then, on the death of the wife and his survivorship, he acquired, by the statute of distributions, the right to her *choses in action* as next of kin, and this legacy, if not previously discharged, devolved to him, as his absolute and indefeasible property ; so much so, that he might receive it from the executor, bequeath it by will, or, if he died intestate, it would pass to his representatives and not to his wife's.   1 *P. Wms* 381.   He had the sole right to administer to his wife : every other person was excluded by the express provisions of the act of assembly of the 21st of March 1772.   Now although it is true that in order to sustain a suit for this legacy, after his wife's death, the plaintiff would have been obliged to take out letters of administration, yet that was a ceremony at all times in his own power to resort to.   He had but to ask, and would have received them as a matter of course.   His disability to sue was a voluntary one.   How then can he set up his own *laches* and indolence in this respect ; or how does it show that he was not paid ?  If the legacy was due, it was a great benefit, and we cannot suppose a person would neglect to receive it, or if not paid would omit to qualify himself to sue for it, unless it had been discharged in some way or other.   It is not like the case of an ordinary administration.  There no one is qualified to demand the property of the intestate without letters of administration.   If the nearest of kin will not take them out, another may ; or even in some cases a creditor.   It is uncertain till letters are granted, who will be clothed with the right.  When appointed, the administrator is not, generally speaking, the person entitled exclusively to the estate, but merely a trustee for those interested.   So in the case of executors, though they are designated, and may do many acts before probate, yet they are not ordinarily the owners of the estate, and it is uncertain whether they will act.   I am therefore of opinion, that the want of administration is not a circumstance operating in favour of the plaintiff to repel the presumption arising from the lapse of time ; and that there is no error in the charge of the court below to that effect.

The receipt of part of the moneys charged within less than twenty

II.—CC

[Foulk v. Brown.]

years before suit brought.    The court below instructed the jury that this was sufficient to repel the presumption as to the part thus received, but could have no operation on moneys before received by the executors, but could have no operation on moneys before received by the executors, and which they ought to have paid over.    In this I can perceive no error.    It cannot be justly pretended that the presumption begins only with the date of the last receipt of money by the executor ; for he is bound to pay over the money as received amongst the legatees, I mean where it is not wanted to pay debts.    The presumption begins from the time the right accrues ; from the time the executor ought to pay, and the legatee is entitled to receive. What amount was received within the twenty years, is uncertain on the accounts.    It would seem likely that some portion was.    In relation to that, the presumption would not arise; but it would as to the receipts, more than twenty years back.

With regard, however, to such portion of the residuary bequest as was not payable till after the widow's death, no presumption can arise except from that period.    That event occurred in 1808.    From 1808 to 1827, when the citation issued, only nineteen years elapsed ; and a period short of twenty years is not sufficient.    This portion the court ought to have distinguished from the main bequest, and as to this, we think there was error in the charge of the court, and that the judgment ought to be reversed.

Judgment reversed, and a *venire facias de novo* awarded.