# Ludlam's Estate.

Where a testator bequeathed "one thousand dollars of the United States six per cent. stock or loan of the year 1812, standing in my name on the books of the Loan Office, Pennsylvania, as per certificate, No. 269," this held to be a specific legacy; and where the testator himself received payment of it from the government, this was an ademption or extinguishment of the legacy, and the legatee was not entitled to receive the amount of it out of the estate of the testator.

The executor having filed in the Register's Office two accounts, in each of which he charged himself with the stock in question, as held in trust for the legatee to whom it was devised; and having also informed the executrix of the legatee of his readiness to pay the same, is not estopped thereby from having his account rectified by the auditor, to whom the account had been re-committed.

An executor has no right to ask for the appointment of an auditor, to make distribution of the balance of his account.

APPEAL from the final decree of the Orphans' Court of *Philadelphia*, confirming the accounts of Matthew L. Bevan, executor of the will of George Ludlam, deceased.

The testator devised to his nephew, James Ludlam, of London, "one thousand dollars of the United States six per cent. stock or loan of the year 1812, standing in my name on the books of the Loan Office, Pennsylvania, as per certificate, No. 269."

The executor filed in the Register's Office two accounts, in each of which he charged himself with the said stock.

After the second account was filed, the executor of the testator wrote to the executrix of the legatee in England, enclosing a copy of his account, as executor, for the information of the heirs of the legatee, and declaring his readiness to pay the amount to which they are entitled, upon receiving the proper legal authority to discharge him from responsibility.

The account was afterwards re-committed to an auditor, before whom it had been before.

It appeared that the government loan, bequeathed to James Ludlam, had been paid to the testator, George Ludlam.

[Ludlam's Estate.]

The auditor, in his report, states that Mr. Bevan, the executor, had been under the belief, that the legacies of government loan were not adeemed, and that he considered himself liable therefor to the legatees, but that he consulted counsel, and was advised to the contrary.

One question before the auditor was, whether the executor was so committed by his acts and accounts, as not to be in a situation to repair his error? The auditor decided that he was not concluded from alledging that the legacies of government loan were adeemed, by payment during the testator's life time; and that his legacy was specific, and was extinguished by payment of the loans during the life of the testator.

This report was excepted to; but the report of the auditor, in this respect, was confirmed by the Orphans' Court.

The case was argued by *Waln*, for the executrix of the will of James Ludlam, the legatee. He contended that the auditor erred in allowing the executor to object to his own accounts, although they had been long filed, and agreed to by Mrs. Ludlam, who was executrix of the will of the legatee, 7 *Watts*, 64, Mylin's estate.

That the Orphans' Court had no authority at the instance of the executor, to confer upon the auditor the power to make distribution; Act of 13th April, 1840, *Purdon* 898.

That the legacy in question was a legacy of quantity, as of so much money, with reference to a particular fund for its payment. He cited 1 *Roper* 150; 4 *Ves.* 150, Roberts *vs.* Pocock; 15 *Ves.* 384; *Ambler* 567; 9 *Ves.* 360; *do.* 146; 7 *John Ch. Cases* 258, and recognized in 3 *Watts* 335, Blackstone *vs.* Blackstone; 2d *Williams on Exrs.* 743. And that the payment of the $1000 government stock to the testator, was not an ademption of the legacy. That the executor was estopped by his accounts and acts from shewing that he should not be chargeable for the legacy in question.

*Cadwalader*, contra, with whom was Dunlap.

The opinion of the court was delivered April 8, by

Coulter, J.—I can perceive no weight in the error assigned and strongly urged, that a legatee only may ask the court to appoint an auditor to make distribution.

If the matter stood upon the isolated ground that, under the statute, an executor would have no standing in court to ask for the appointment of an auditor for that purpose, it would be assented to. But, in this instance, the auditor having been appointed and made report to the court, his functions were ended, without some further action by the court. In that position of the case, the legatee now objecting appeared in court and prayed that the

[Ludlam's Estate.]

report should be recommitted to the auditor for further hearing and examination. He might have moved the court to quash the proceeding as irregular, but he did not choose to do that. On his motion and application, the report was recommitted, and he had a full hearing before the auditor, to whose report he now objects.— Under these circumstances, if the original appointment cannot be considered as having been made at his instance, he at least adopted it, and made the proceedings his own, and must now be held to it; as a party cannot be allowed to play fast or loose with judicial proceedings, according to his interest.

Besides, Mr. Dunlap, who made the motion for distribution on behalf of the executor, was also attorney for one of the legatees, and in that capacity, adopts and sanctions the proceeding.

It is strenuously urged by the objecting legatee, that there is no evidence that the $1000 United States loan, in relation to which the controversy arises, was paid to George Ludlam, in his life time, by government. But the auditor distinctly reports that the evidence before him satisfactorily established that the loans were paid off to the testator in his life time. We must therefore regard the fact as established, because the report of an auditor, like an award of referees, or verdict of a jury, determining upon facts, ought not to be set aside, except for plain mistake, which it is the business of the exceptant to establish by affirmative evidence. 5 *Rawle* 323. But the exceptant called Matthew L. Bevan, the accountant, as a witness, and examined him before the auditor, which he had a right to do, and the witness stated that the amount of the United States stock loan was delivered to Mr. Bevan, by the testator, in his life time. Bevan's house being the bankers of the deceased. This court, therefore, must take it as established that the amount of the loan held by Ludlam, the testator, was paid to him in his life time. And this approximates us to the main question in the cause, that is, whether the payment by government of the one thousand dollar stock to the testator was an ademption of the legacy of that stock to James Ludlam, of Oxford street, London. We are met, however, as preliminary to the consideration of this point, with the exception that Mr. Bevan, the executor, was estopped from alledging that the stock was extinguished in the life of testator and the legacy adeemed by the fact that he charged himself with the amount of the stock in his administration account, as stock existing. That entry in the account is in this form, " the following in my hands to be disposed of as the will directs," and then enumerates other stocks specifically bequeathed, and adds with them, " to shares United States six per cent. stock at par $1000." The executor had the fund in his hands, and merely followed the description of stocks in the will, and it is evident that at that time, he believed this stock would go to the representatives of James Ludlam, to whom he wrote, to

[Ludlam's Estate.]

that effect, in England. He was then ignorant that in certain cases of specific legacies, the law considered the legacy adeemed and lost when the specific *corpus* of it was destroyed. But he said no more, in effect, than that he would pay the whole according to the provisions of the will. But, upon consulting counsel, he was instructed that this legacy of the United States stock was adeemed, and did not belong to the representatives of James Ludlam, but that the amount thereof went to the residuary legatee. And the question is whether this mistake, (of law, if you choose to call it so,) shall estop the executor before payment of the money, out of his hands, from doing that which is just and lawful, and thereby protecting himself. It is very clear that if the legacy was adeemed, a payment by the executor to the representatives of Ludlam would not protect him from repayment to the residuary legatee, who would, in that category, be entitled to demand and receive the amount. Is then the executor estopped by inserting it in his account *as stock*, and deprived of the benefit of the law as applied to the real facts of the case? If he had made a voluntary payment, with a knowledge of all the facts, to James Ludlam's representatives, whether in such case he could recover it back from them on account of his mistake of the law, would present a question entirely different, and one on which it is not necessary to express any opinion. He discovered his mistake after his account was presented in the Orphans' Court, and before any distribution of the fund. Was he irrevocably bound or estopped by that settlement? He was not. In McCoy's Appeal 15 *S. & R.* 57, when three executors had settled an account, and balance decreed, it was held that after a lapse of six years, they could not settle separate accounts by which two of them were discharged from all the assets; because it would be to the injury of creditors, after so long a time; but it was not pretended that otherwise the settlement was conclusive. In Marriot *vs.* Davey, 1 *Dallas*, 164, in an action against an executor by a legatee, it was held that the settlement of an account was not conclusive. In Foulk *vs.* Brown 2 *Watts* 214, it is said by SERGEANT, J., that the settlement in the Orphans' Court is to show the balance of assets in the executor's hands, after payment of debts and charges, and can have no effect as to the amount due to a legatee. By statutory provision, distribution is to be made by an executor under the direction of the Orphans' Court having jurisdiction of their accounts, and the decree of distribution is a subsequent and different decree from that by which the amount of assets is fixed and established. The persons who are the legatees, and the amount they shall receive, is the object and purpose of the decree of distribution, which is not controlled or fettered by admissions or declarations of the executor, either in his account or elsewhere, except as to the amount of assets in his hands.

[Ludlam's Estate.]

An estoppel is usually where a man, by asserting what is not true, induces another to do an act which would be to his hurt and detriment, if the other were permitted to establish that the assertion which he made, and which induced the act, was false. But the executor did not mislead the representatives of James Ludlam to do anything to their injury. He communicated a copy of the account, a copy of the will, and informed them that he was ready to pay according to the will. Now, they were entitled to receive other stocks not adeemed, and the most that can be said is that they will not receive as much as they would appear to be entitled to by the face of the will, and that he did not inform them that the legacy of the $1000 government stock was adeemed, which it would appear that he did not himself then know was the legal effect of its being paid to the testator in his life time by the government. There is nothing in the case which prevented the Orphans' Court from decreeing this sum to the person legally entitled to demand and receive it. If Mr. Bevan had paid the money to Ludlam's representatives, and they had expended or used it, a different case would be presented on an attempt to recover it back; but his putting it into the administration account, under an erroneous impression that it still belonged in its changed and altered condition to James Ludlam's representatives, does not conclude and bind him; especially it does not make or convert a specific legacy into a general money legacy. We come then to the question whether this was a specific legacy or not. If it was specific—*of the very corpus* of the United States stock held by the testator—then it was adeemed; because the *corpus* of that stock was extinguished and paid to the testator before his death. The words of the bequest would seem to leave little doubt on this subject "*One thousand dollars of the United States six per cent. stock, of the year 1812, standing in my name in the loan office Penn'a. as per certificate No.* 269." It is not a bequest of $1000 payable out of stock held by him; but $1000 of stock which stands in his name in the loan office, by certificate 269. It is the very thing itself, the *corpus* of the stock, that is bequeated. In Blackstone *vs.* Blackstone, 3 *Watts,* 337, where the bequest was "of all my 250 shares of stock which I hold in the bank, together with such interest as may have accrued thereon," and where it appeared that testator sold the stock in his life-time, and took a bond for the same, although there was evidence that the testator declared the bond should be in *lieu* of the stock, it was ruled that the legacy was adeemed. *There,* the change of the *corpus* of the legacy was from bank stock into a bond; *here,* the change is from government stock into money, which mingled itself with the other money of the testator. *There,* it was "my *bank stock* which I hold;" *here* it is "my *government stock* standing, in my name, on the books" &c. as per certificate 269." One does not individuate the corpus of the gift more distinctly than

[Ludlam's Estate.]

the other, and each is so definite as to defy mistake. These very words, to wit: "*stock standing in my name*," were held in Barton *vs.* Cook, 5 *Ves.* 461, to make a legacy specific. It is of no consequence that the change was not effected by the sole act of the testator. The change was not effected by act or operation of law; it was the act of the government, which was the debtor of the testator. It is precisely the same as if a bond, payable by A to testator, had been paid in the life time of the obligee. The principle depends upon the entire change or destruction of the fund, security, or chattel specifically bequeathed; and what difference can it make in the principle whether the change be made by the act of the testator himself, or merely with his assent and knowledge.— He knows that the *corpus* of the thing bequeathed is gone, and cannot be available to the legatee. But the distinction once made on the subject is now obliterated: Walton *vs.* Walton, 7 *John. Ch. Ca.* 258; 1 *Roper on Legacies*, 243. It is often said that the law leans against specific legacies, and inclines to general and demonstrative legacies, as some people call legacies general, but payable, in the first instance, out of a particular fund. But they exist, nevertheless, and *when well defined*, must have their legal effect. We think this was a specific legacy, as well from the words of the will manifesting such intent as from the application of legal rules; and the *corpus* of it having been received by the testator in his life time, it was adeemed as extinguished, and the amount dropped into the surplus to be disposed of under the residuary clause. We cannot be persuaded that the executor was not at full liberty to have the misapprehension corrected before the auditor. The whole account is referred to be adjusted according to law, and not merely one side of it. The accountant is within the protection and care of the auditor, and the Orphans' Court, under whose direction the distribution is to be made, as well as the distributees; and justice should be meted out to one, as well as to the other.

The decree of the court upon the report of the auditor is affirmed.