## Turner *against* Waterson.

4 WS 171
30 SC 4155

The recital in a treasurer's deed for unseated land of the amount for which the land was sold, is not conclusive evidence of the fact; but the purchaser, in support of his title, may show, by the sale-book and parol evidence, that it sold for a different sum; and that the surplus bond given by him corresponded with the actual amount for which the land was sold.

A defendant in ejectment having proved a title by actual settlement, it is not competent for the plaintiff to show that the defendant had purchased and claimed under another title by warrant and survey: for even if true, the prior title would not merge in the latter.

Superintending a survey or paying the fees, is sufficient evidence of ownership of the application or warrant upon which it is made, unless rebutted by evidence of ownership in the person in whose name the application was entered or the warrant was issued.

If one who is interested that the plaintiff shall recover, be called by the defendant and examined as a witness as to a particular fact, he is thereby made a competent witness for the plaintiff as to other facts.

ERROR to the Common Pleas of *Jefferson* county.

This was an action on the case by Frederick Turner, David Wilson and George Dull, against James Waterson and Job Payne, in which the plaintiffs claimed to recover damages from the defendants for erecting a dam across Spring Creek, by which the plaintiffs' land was overflowed and their mill-seat drowned out. The defendants pleaded not guilty.

The plaintiffs, in order to establish their title to the land alleged to have been flooded by the dam, gave in evidence a warrant to Robert Morris, No. 3736, for 1000 acres, dated the 5th of March 1793, a survey of 660 acres made thereon the 15th of October 1831, which was returned the 25th of June 1833. They then gave in evidence an assessment of the land with taxes for the years 1836 and 1837, as unseated, and a deed from the treasurer of Jefferson county dated the 13th of August 1838 to Elijah Heath, in which the taxes and costs were recited to be $21.45, and the land to have sold for $67.94. The plaintiff then offered in evidence the surplus bond for $26.52. The defendant objected to the bond, on the ground that it was not given for a sum equal to the difference between the amount of the taxes and costs, and the sum for which the land was sold. The court sustained the objection, and sealed a bill of exception at the instance of the plaintiff.

The plaintiff then offered in evidence the treasurer's sale list, and to prove by the treasurer that the amount mentioned in the deed as the price at which the land sold was an error, and that in fact it was sold for $42.67 and that the bond before offered was

[Turner v. Waterson.]

for the exact surplus. But the court, upon an objection by the defendants, overruled the evidence, and sealed another bill.

The plaintiffs then offered in evidence the will of Robert Morris, dated 13th of June 1804, by which he devised his estate to Mary Morris; also the will of Mary Morris, dated 2d of October 1824, by which she devised her estate to Maria Nixon, and the deed of Henry Nixon and Maria his wife to E. Heath, dated the 23d of January 1839, and deed of E. Heath to the plaintiffs. The defendants objected, that the wills of Robert Morris and Mary Morris vested no title in the devisees, the warrant not having been located, being a mere chattel or chose in action which passed to the executor for the payment of debts: that the deed of Nixon and wife conferred no title, because they never had any. The court overruled the objections, and the defendants excepted.

The defendants called E. Heath, who testified, " I gave the deed to Mr Dull. I told him he had better leave it in the hands of Mr Clover; that he could have it when he called for it; there might be a dispute about delivery; Mr Clover could not be found. Dull handed it back to me, and said it might as well be in the hands of his counsel as any other place. Dull did not object to the deed."

The defendants further for the purpose of showing title in themselves, proved that there was an actual settlement made on the land in 1829 by William Townley, who marked his boundaries, and which included the land in dispute. Whether this actual settlement was sufficiently established by proof was referred to the jury as a matter of fact. This title was vested in the defendants. The defendants then called E. Heath again, who testified that he was the deputy-surveyor who executed the Robert Morris warrant in 1831, and that the survey was made for Philip Clover and Hugh and George Carson, and that they paid him all he ever received for the work. The undivided interest of Philip Clover became vested in the defendants by deed dated the 15th of September, 1837.

The plaintiffs then, to rebut the evidence of the defendant, offered to show an application of Philip Clover for 30 acres of land, including the mouth of Spring Creek, dated 14th of November 1831, and warrant of the 5th of December 1831, taken out on an improvement made by him in 1825: a survey on the 20th of December 1831, to be followed by proof that the defendants had their improvement and residence on this warrant, and now claimed the same by legal title derived from Philip Clover. The defendants objected to the evidence as immaterial, and the court rejected it, and sealed an exception.

The plaintiffs then proposed to call E. Heath, who had been twice before called by the defendants, and to prove by him, that at the time the survey was made for Clover and the Carsons on the Robert Morris warrant, William Townley said it did not interfere with his claim, and to prove all that he said. The defendants

[Turner v. Waterson.]

objected to the competency of the witness on the ground of interest, having conveyed the land to the plaintiffs by deed of general warranty. The court rejected the witness, and sealed a bill of exception.

M'CALMONT, President, instructed the jury as to what was necessary to constitute a title by actual settlement, and then referred the fact to them whether the proof made out the actual settlement of Townley; that if the jury believed that Clover and the Carsons put the Robert Morris warrant into the hands of the deputy-surveyor and paid the expenses of the survey, and that there was no evidence of any act done by the warrantee or his devisees for a period of forty years, the jury were bound to presume a sale of the warrant by Robert Morris or his devisees to Clover and the Carsons. That the purchase of the warrant of Robert Morris, although it included the Townley improvement, was not an abandonment by the defendants of their title under that improvement.

Errors assigned:

1. In rejecting the evidence of the actual amount for which the land was sold at treasurer's sale.

2. In rejecting the title under the thirty acre warrant.

3. In the instruction to the jury that they were bound to presume a sale of the warrant by Robert Morris or his devisees.

4. That the Townley improvement title did not merge in the subsequent title by warrant and survey.

5. In rejecting E. Heath as a witness, who had twice before been called and examined by defendants.

*Heath,* for plaintiff in error, contended that it was competent to show the truth with regard to what the land sold for; that the recital in the deed was not conclusive; (9 *Watts* 156; 4 *Watts* 363; 5 *Watts* 288; 10 *Watts* 211.) The defendants had examined E. Heath to prove that he had executed the Robert Morris warrant for Clover, and the plaintiffs then called him to prove what had occurred on the ground during the time he was executing it, and the court rejected his testimony on the ground of his interest. It cannot be that one party may call an interested witness and get one half of the truth, and that the other party shall not be entitled to the other half, especially when the half that he seeks to get is to elucidate what had before been given.

*Buffington, contra,* argued that the surplus bond was rightly rejected, because it did not correspond in any particular with the facts recited in the deed, and that it was not competent to make them correspond by parol evidence. The witness, it was admitted, was interested, and he was therefore incompetent to testify for the party to whom he was bound by a warranty to make good his title; and yet it is clear he was a competent witness for the other

IV. — P *

[Turner v. Waterson.]

party : the fact he was called to prove by the plaintiff was not in the nature of a cross-examination, but an independent fact.

The opinion of the Court was delivered by

SERGEANT, J.—To show the regularity of the actual proceedings, we are of opinion that the evidence offered by the plaintiffs ought to have been admitted. The deed, it seems, recited that the land was sold for $67.94, and that the tax and costs were $21.45. According to this, the bond being only $26.52, instead of $46.49, was for less than the surplus. But the plaintiffs offered the treasurer's sale list of the year 1838, and also the evidence of the treasurer, to show the recital to be a mistake; that the sum stated in the deed was an error, and that the bond was for the exact amount of the surplus due. The recital in a treasurer's deed of the amount for which the land was sold, is secondary evidence, and when the original documents are lost or destroyed, it may supply their place. But where they exist, they are the best evidence of the facts, and where they are defective, parol evidence is of equal validity to the recital, and they may be admitted to show the recital a mistake. The owner of the land is in no way affected by the contents of the recital. If the bond is really for the surplus, that is all in which he is concerned, and it is all the purchaser is bound to look to. There was error, therefore, in rejecting this evidence.

2. The defendants showed a title by settlement made by William Townley, and conveyed to them on the 18th of July 1836. This, it would seem, embraced the *locus in quo.* The plaintiffs offered to show a title or claim of Philip Clover to 30 acres, part of this 100 acres, under a warrant and survey to him in 1831, and that the defendants resided thereon and claimed under legal title from Clover. This, we think, the court properly rejected as leading to nothing. The defendants might buy an outstanding claim on a third person, whether good, bad, or indifferent, without being thereby reduced to the necessity of surrendering their other title. The doctrine of merger has no application. Nothing is more common than to buy in outstanding claims, to get rid of vexation and trouble, or to fortify a subsisting title. It would be hard to construe such purchase as destroying the subsisting title.

3 & 5. In these points, also, we think there was no error. The warrant of Robert Morris of the 5th of March 1793, conveyed no right to any specific land till surveyed. For thirty-eight years nothing was heard of it. In the meantime, the settlement of Townley had been commenced on the 100 acres, in 1829, and was continued. The Morris warrant was not surveyed until the 15th of October 1831, and then it was surveyed for Philip Clover and Hugh and George Carson, whose title, (or some of them), the defendants have. They placed the warrant in the hands of the surveyor, employed him to make the survey, and paid him all he ever received; and there is no evidence of any act done by

[Turner v. Waterson.]

the warrantee or other person on his behalf, in respect to the warrant, until the year 1839, when the devisees under Morris conveyed to the predecessor in title of the plaintiffs, Mr Heath. The court below, under these circumstances, instructed the jury, that they might presume a sale of the warrant by Robert Morris, or the devisees under him, to Clover and the Carsons.

Superintending the survey, or paying the fees, has generally been deemed sufficient evidence of ownership of an application or warrant, unless rebutted by evidence that the person so superintending or surveying acted as agent, or unless possession or some act of ownership appears in favour of the person in whose name the application was entered or the warrant was issued.  *Campbell* v. *Galbreath,* (1 *Watts* 70); *Cluggage* v. *Duncan,* (1 *Serg. & Rawle* 117); and payment of the purchase money when the warrant was issued, is not conclusive to show ownership in the person paying, for the money may have been furnished by another. Forty-six years had elapsed in 1839, when the first step was taken in the Morris claim by a conveyance to Heath, and in the meanwhile the survey for Clover and the Carsons had been made in 1831, and a conveyance executed in 1836 from Clover to Richards and Chapin.  After this lapse of time, without any circumstances to rebut it, the right of the owner, as against an intervening survey and claim, may fairly be considered as sold or abandoned.

4. The same observations apply to this error which have been made on the 2d error.

5. Heath was called by the plaintiff after having been twice examined by the defendant, and was rejected as interested.  But after being called by the defendant and examined as a witness, it would not lie in defendant's mouth to object to him as incompetent.  See *Southwark Insurance Company* v. *Knight,* (6 *Whart.* 330); *Stockton* v. *Demuth,* (7 *Watts* 39).  In this, therefore, there was error.

For these errors the judgment is reversed.

Judgment reversed, and a *venire facias de novo* awarded.