## Carter *versus* Tinicum Fishing Co.

1. Title to a fishery was in Sanderlin in 1748; partition of his estate was had; James, the husband of Mary, one of his heirs, deceased, being a party; it was adjudged in 1754 to "the representatives of Mary, late wife of James," subject to a ground-rent, the whole estate being divided into five shares. Elizabeth and others, reciting that they were heirs of "James, who was an heir of Sanderlin," conveyed in 1805 to Carter; the deed also recited the proceedings in partition; also, prior deeds reciting the partition and that the grantors were heirs of other heirs of Sanderlin, and conveying to Carter their interest in two-fifths of the fishery. There was no other evidence of the pedigree of the grantors, nor of any claim by the descendants of Sanderlin for the fishery. *Held,* sufficient to raise a presumption of any grant, &c,, to make a good title to Carter of the fishery.

2. Presumptions arising from great lapse of time and non-claim are sources of evidence which a court is bound to submit to a jury as the foundation of title by conveyances long since lost or destroyed.

3. Acts of ownership over incorporeal hereditaments, corresponding to the possession of corporeal, are deemed a foundation for a presumption.

January 18th 1875. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Delaware county :* No. 96, to January Term 1874.

This was an action on the case, brought July 26th 1867, by Paul B. Carter against The Tinicum Fishing .Company, for the disturbance of a right of fishery on the Delaware river, twelve-fourteenths of which the plaintiff claimed that he owned. The defendants owned the land in front of the fishery, and, by per-

77    310
20 SC    283
20 SC    ²285

77    310
21 SC    ²166

77    310
22 SC    ³173

77    310
26 SC    ¹210
26 SC    ²598

77    310
f217    ¹396

mission of the port wardens of Philadelphia, had erected a pier, which the plaintiff alleged interfered with his right.

The case had been tried twice before, and had been reversed in the Supreme Court: it is reported in 11 P. F. Smith 21.

It was tried the third time, December 2d 1872, before Butler, P. J.

The land had belonged to Christopher Taylor, who in 1848 devised to David Sanderlin "his fishing-place" in fee. After the death of Sanderlin, James Claxton, Oliver Thomas, William Smith and George Pooly, the husbands of four sisters of Sanderlin, and the children of Ann Venable, another sister, deceased, presented a petition to the Orphans' Court, setting out that Sanderlin had died intestate, unmarried and without issue, and praying for partition of his real estate amongst the children of Ann Venable and the representatives of the late wife of James Claxton. The property was divided into four shares, and the inquest returned, amongst other things : " We have, by the consent and agreement of all parties concerned, allotted and laid out, to and for the representatives of Mary, late wife of James Claxton, all that fishing-place situate on the island of Tinicum, at the yearly rent or sum of forty shillings, lawful money of Pennsylvania, which said yearly rent is to be divided into five equal parts or shares."

On the 22d of August 1796, James Hogan and wife conveyed one-fifth of the fishery to Joseph Carter, and on the 10th of March 1797, Ann Hannis, David Thomas, Robert Hannis and Deborah his wife, conveyed another fifth of the fishery to Joseph Carter ; both deeds recited that the grantors were " heirs " of their respective fifths of the fishery according to the division, and that they " were seised of the fishery as heirs of Sarah Thomas, a sister of David Sanderlin." On the 6th of February 1805, Mary Claxton, Elizabeth Claxton, James W. Massey and Thomas Massey, conveyed the whole of the fishery to Joseph Carter. This deed recited that the grantors were the heirs of James Claxton, who was one of the heirs of David Sanderlin. All these deeds recited the partition as having been made in 1754, referred to the partition, and named the inquest who made it.

Joseph Carter, by his will proved February 6th 1830, devised the fishery to two sons, and from them the title to twelve-fourteenths came to the plaintiff by several deeds, the last being dated September 19th 1851.

The plaintiff gave evidence of the use of the fishery by his predecessors for a very great number of years ; some of the witnesses testified to the use for sixty or seventy years.

The plaintiff gave evidence also of the erection of obstructions by the defendants.

The defendants gave evidence of their title to the land, showing that it had belonged to the same Christopher Taylor, and been

[Carter *v.* Tinicum Fishing Co.]

devised by him to John Taylor, from whom the defendants deduced their title by divers conveyances; and also evidence tending to prove an abandonment of the fishery by plaintiff and his predecessors.

The court charged, "As announced on a former trial, we do not find any satisfactory evidence of a paper title in the plaintiff," and, after going over the evidence, instructed the jury to find a verdict for the defendants.

The jury found for the defendants.

The plaintiff took a writ of error, and assigned the above portions of the charge for error.

*Carter p. p.* and *A. Thompson,* for plaintiff in error.—Joseph Carter's deed was an *ancient deed,* being more than thirty years old, and there having been a continuous user of the right under it, the recitals were evidence of pedigree: Bowser *v.* Cravener, 6 P. F. Smith 142; Paxton *v.* Price, 1 Yeates 500; Little *v.* Pallister, 4 Greene 209. There was evidence to establish title in plaintiff by prescription or grant: Gray *v.* Bond, 2 Brod. & Bing. 667; Worrall *v.* Rhoads, 2 Whart. 427; Wheatley *v.* Chrisman, 12 Harris 298; Jones *v.* Crow, 8 Casey 398; Garrett *v.* Jackson, 8 Harris 331; Reimer *v.* Stubbs, Id. 458; Esling *v.* Williams, 10 Barr 126. Where there is the grant of an easement, without a deed hostile to it, and adverse possession, there is no prescription or presumption from mere non-user: Lindeman *v.* Lindsey, 19 P. F. Smith 93; Buckholder *v.* Sigler, 7 W. & S. 154. Where there is an apparent and continuous servitude placed on one part of the land by the owner for the benefit of another part, a purchaser takes subject to it: Seibert *v.* Levan, 8 Barr 383; Overdeer *v.* Updegraff, 19 P. F. Smith 110; Cannon *v.* Boyd, 23 Id. 179.

*W. McVeagh* (with whom was *W. Ward*), for defendants in error.—A riparian owner can erect works on a river to protect his property and prevent the current from carrying away his ground: Bowyer on Public Laws 368 (59 Law Lib.); Phear on Water-rights 54; 1 Crabb's Real Prop. 121; King *v.* Essex, 1 B. & C. 477.

Chief Justice AGNEW delivered the opinion of the court, March 1st 1875.

This case has been before us three times, including the present writ of error. The verdict having been for the plaintiffs below, in the former trials, the question before us now was not then fairly presented. Upon the second writ of error, Justice Sharswood said: "We must dismiss from our consideration the fact that evidence was given of a devise of a fishing place by a former owner

[Carter v. Tinicum Fishing Co.]

of the shore, under which the plaintiff attempted to deduce title. He failed, in the opinion of the learned judge below. Whether he was right or wrong in that opinion is a question which we have not before us on this writ of error." 11 P. F. Smith 21.

On the last trial, the verdict was for the defendant, under the charge of the same learned judge below, and the question is now directly before us upon the derivation of the plaintiff's title, under the devise alluded to. The learned judge held the evidence of derivation of title to be insufficient. In this we think he erred.

The plaintiff gave in evidence the will of Christopher Taylor, the former owner of the land, now held by the defendants, dated in 1748, and proved on the 24th of December of that year, in which he devised the land to John Taylor, and his fishing-place thereupon to David Sanderlin, his heirs and assigns. This was followed by proceedings in partition of the estate of David Sanderlin, and certain deeds to be noticed presently.

The plaintiff, Paul B. Carter, claimed the right of fishing through the will of Joseph Carter, dated July 6th 1828. The title to the fishing-place vested in Joseph Carter by virtue of three several deeds from James Hogan and wife, dated August 22d 1796, Ann Hannis, David Thomas and Robert Hannis and wife, dated March 10th 1797, and Mary Claxton, Elizabeth Claxton, James W. Massey and Thomas Massey, dated February 6th 1805. In all these deeds the grantors recite title under David Sanderlin, and a partition of his estate in the year 1754, referring specifically to the proceedings in partition, and, naming the jurors who made the partition. On referring to this proceeding we find the evidence which fully connects it with the deeds to Joseph Carter. It was commenced on the 3d of October 1752, upon the petition of James Claxton, Oliver Thomas, William Smith and George Rowley, married to four sisters of David Sanderlin (says the petition), and the guardian of the children of Ann Venable, another sister. The petition sets forth that David Sanderlin died intestate, unmarried and without issue. These sisters were therefore his collateral heirs. The petition prays for partition among the children of Mrs. Venable and the *representatives* of the *late* wife of James Claxton." Mary Claxton was therefore then dead, and was represented in the petition by her husband. The right of the husband to proceed *alone* for the partition of his wife's estate, under the former laws, is recognised in Stoolfoos v. Jenkins, 8 S. & R. 167, and expressly decided in Eckert v. Yous, 2 Rawle 136. On referring to the partition itself, we find that the property of David Sanderlin was divided into five shares, by the jurors named in the deeds to Joseph Carter; coming to the fishery, it proceeds, " and we have by the consent and agreement aforesaid allotted and laid out to and for the representatives of Mary, the late wife of James Claxton, all that fishing-place situate on the island of Tinicum, at the

[Carter *v.* Tinicum Fishing Co.]

yearly rent or sum of forty shillings, lawful money of Pennsylvania, which said yearly rent is to be divided into five equal parts or shares." The one-fifth of the lands themselves were allotted in the same form to " the representatives of Mary, the late wife of James Claxton." Several things are learned from this proceeding. David Sanderlin died intestate, unmarried, and without issue, and his heirs were therefore collaterals. Mary, his sister, and the wife of James Claxton, was dead, and he stood alone as the party to the petition, and the representative of her heirs. The fishery was assigned to her representatives, subject to an annual rent, somewhat in the nature of a ground-rent. These things make manifest the relevancy of the recitals in the deeds to Joseph Carter. Thus the deed of 1805 from Mary Claxton, Elizabeth Claxton, James W. Massey and Thomas Massey, recites that they " stand seised in our demesne as of fee of and in the right to a fishing-place on Tinicum Island, we being heirs of James Claxton, deceased, who was one of the heirs of the estate of David Sanderlin, deceased, who died intestate, seised of the same in fee." That recitals in a deed much less ancient than this, are evidence of pedigree, is decided in Bowser *v.* Cravener, 6 P. F. Smith 142—following Paxton *v.* Price, 1 Yeates 500. The mistake the scrivener made in calling them the heirs of James Claxton, instead of Mary, is evident, and makes no difference in a deed so ancient, for several reasons. Mary, the wife, was not alive, and her representatives are not named in the proceeding. James Claxton was the only party, and was legally competent to conduct the proceeding, and the issue of Mary Claxton would be the issue of James also, and bear his name. Here, then, is a deed seventy years old, founding itself on a partition fifty years before, containing recitals directly connecting the grantors with the partition, and the only living party thereto, one who rightfully represented the deceased wife. . This title has stood undisputed by the heirs of Mary Claxton to this day. Unless these persons be the heirs of Mary Claxton, who are they? Since that partition one hundred and twenty years have elapsed, and no others have laid claim to represent her. In a deed so old the name of Massey evidently cannot take away from its effect. They join with the Claxtons in calling themselves the heirs, and claiming title under the partition. Evidently they were the issue of a female Claxton married to a Massey. These are presumptions a jury must draw in a transaction so far beyond the capability of modern proof, as will be shown presently.

We then come to the two deeds of 1796 and 1797 to Joseph Carter, in which the grantors recite that they are the heirs of Sarah Thomas, who was one of the heirs of David Sanderlin, and recite the same proceedings in partition as the foundation of their title. On referring again to the proceeding in partition we find that Sarah Thomas was a sister and heir of David Sanderlin, and

wife of Oliver Thomas, one of the petitioners, and that she was, therefore, entitled to one of the five shares of the rent charged upon the fishery in the hands of the representatives of Mary Claxton. Thus their connection with the title is made plain. Now, whether the other shares had become vested in these grantors, or in the Claxtons, is not material, for after these deeds to Joseph Carter the existence of the rent is not heard of. According to the authorities to be referred to, the rent not accounted for, or any shares in the estate in the fishery, will be presumed to have been vested in them, or some of them, after this great lapse of time, and no claim by any one.

Presumptions arising from great lapse of time and non-claim are admitted sources of evidence, which a court is bound to submit to a jury as the foundation of title by conveyances long since lost or destroyed.

This is stated by C. J. Tilghman, in Kingston v. Leslie, 10 S. & R. 383. There the absence of all claim for years on the part of a female branch of a family, represented by Honorie Herrman, at an early day, was held to constitute a ground to presume that her title had been vested in the male branch. Judge Tilghman remarked : " I do not know that there is any positive rule defining the time necessary to create a presumption of a conveyance. In the case of easements and other incorporeal hereditaments, which do not admit of actual possession, the period required by law for a bar by the Statute of Limitations is usually esteemed sufficient ground for a presumption." This doctrine of lapse of time is discussed at large by Justice Rogers in Reed v. Goodyear, 17 S. & R. 352–3. " The courts of law," he remarks, " pay especial attention to rights acquired by length of time. Although it has been doubted (he says) whether a legal prescription exists in Pennsylvania, yet the doctrine of presumption prevails in many instances." He quotes and approves the language of Chief Justice Tilghman in Kingston v. Leslie, in relation to presumptions in the case of easements and incorporeal hereditaments, and adds : " The rational ground for a presumption is where, from the conduct of the party, you must suppose an abandonment of his right." Among the cases he cites is one directly applicable to a fishery : " So a plaintiff had forty years possession of a piscary ; the court decreed the defendants to surrender and release their title to the same, though the surrender made by the defendant's ancestor was defective : Penrose v. Trelawney, cited in Vernon 196. Justice Sergeant said, in Foulk v. Brown, 2 Watts 214–15 : " The court will not encourage the *laches* and indolence of parties, but will presume, after a great lapse of time, some compensation or release to have been made ; thus length of time does not operate as a positive bar, but as furnishing evidence that the demand is satisfied. But it is

[Carter *v.* Tinicum Fishing Co.]

evidence from which, when not rebutted, the jury is bound to draw a conclusion, though the court cannot."

Again he says, " The rule of presumption, when traced to its foundation, is a rule of convenience and policy, the result of a necessary regard for the peace and security of society. Justice cannot be satisfactorily done where parties and witnesses are dead, vouchers lost or thrown away, and a new generation has appeared on the stage of life, unacquainted with the affairs of a past age, and often regardless of them. Papers which our predecessors have carefully preserved are often thrown aside, or retained as useless by their successors." Acts of ownership over incorporeal hereditaments, corresponding to the possession of corporeal, are deemed a foundation for a presumption. " The execution of a deed," says Gibson, C. J., " is presumed from possession in conformity to it for thirty years; and why the entire existence of a deed should not be presumed from acts of ownership for the same period, which are equivalent to possession, it would not be easy to determine :" Taylor *v.* Dougherty, 1 W. & S. 327. And, said Black, C. J., in Garrett *v.* Jackson, 8 Harris 335 : " But where one uses an easement whenever he sees fit, without asking leave and without objection, it is adverse, and an uninterrupted enjoyment for twenty-one years is a title which cannot afterwards be disputed. Such enjoyment, without evidence to explain how it begun, is presumed to have been in pursuance of a full and unqualified grant." This is repeated by Justice Woodward, in Pierce *v.* Cloud, 6 Wright 102–14. See his remarks also in Fox *v.* Thompson, 7 Casey 174, that links in title are supplied from long and unquestioned assertion of title. The same principles are repeated by the late C. J. Thompson in Warner *v.* Henby, 12 Wright 190. The necessity of relaxing the rules of evidence in matters of ancient date was shown in Richards *v.* Elwell, 12 Wright 361, a case of parol bargain and sale of land, and possession for forty years. The court below held the party to the same strictness of proof required in a recent case. It was there said by this court : " If the rule which requires proof to bring the parties face to face, and to hear them make the bargain, or repeat it, and to state all its terms with precision and satisfaction, is not to be relaxed after the lapse of forty years when shall it be ? After a lapse of fifty or sixty years it is not probable that any witness can be found above ground to state anything. Shall we wait for that period before we begin to relax ? In the ordinary course of human affairs forty years are almost as likely to carry the proofs beyond the memory of living witnesses. It is contrary to the presumptions raised in all other cases—presumptions which are used to cut off and destroy rights and titles founded upon records, deeds, wills and the most solemn acts of men. Based upon a much shorter time we have the presumptions of a deed, grant, release, payment of money, abandon-

[Carter v. Tinicum Fishing Co.]

ment and the like." And again : " There is a time when the rules of evidence must be relaxed. We cannot summon witnesses from the grave, rake memory from its ashes, or give freshness and vigor to the dull and torpid brain." The same principles are held in the following cases : Turner v. Waterson, 4 W. & S. 171 ; Hastings v. Wagner, 7 Id. 215 ; Brock v. Savage, 10 Wright 83. The present case is stronger than any herein cited. The title of Joseph Carter had its inception in 1796–7, and its full completion in 1805. Living witnesses on the trial carried back his actual enjoyment and possession of this fishery upon the land, now held by the defendants, to the very beginning of this century. From that time it has continued without challenge or denial by any one claiming title under Mary Claxton or her heirs. That of itself is sufficient to raise a presumption of any deeds, grants or devolutions by descent to make a good title in Joseph Carter to the fishery devised to David Sanderlin. When to this we add the proceedings in partition, and the recitals in the deeds, together with the antecedent lapse of fifty years from the time of the partition, all doubt vanishes as to the devolution of the title by regular steps to Joseph Carter. It is quite probable that the attention of the learned judge below was not drawn to the purport of these papers, and the facts deducible directly from their face, or to the effect of the lapse of time in welding together the broken links of title, if *any* existed prior to the deeds to Joseph Carter. The oversight led to error in instructing the jury that the plaintiff had not shown title to the fishery devised by Christopher Taylor to David Sanderlin. The evidence was most ample, and ought not to have been disregarded by the jury.

Judgment reversed, and a *venire facias de novo* awarded.