70     367
20 SC ¹281

## Hannum *versus* West Chester.

1. Davis owning a large tract of land on which was a mill, dam and race, granted to his son a part of it on which was the mill (the dam and race being on the part not granted), "together also with the mill-dam and race on the several courses as they now run, and have heretofore been in use for the mills through the upper plantation, * * * and all the land now drowned and occupied by said dam and race, or that has been drowned by the same, with the full and uninterrupted right and use of all the water falling into the said dam and race, to be conveyed along the same," &c.  *Held,* that the *land* passed.

2. The maxim " *Quoties in verbis nulla est ambiguitas, ibi nulla expositio contrà verba fienda est,* applied.

3. Although a strained interpretation may be admissible, where an absurdity would ensue, yet if the intention of the parties is not clear but *in equilibrio,* the words should receive their natural construction.

January 16th 1872. ᐟ Before THOMPSON, C. J., AGNEW and SHARSWOOD, JJ.  WILLIAMS, J., at Nisi Prius.

Error to the Court of Common Pleas of *Chester county :* No. 416, to January Term 1871.

The proceedings in this case were instituted by Samuel Hannum against The Burgesses, &c., of the Borough of West Chester, to obtain compensation for the diversion of water from a stream passing through his plantation for the waterworks of the borough. The venire to the jury to assess the damages was issued December 10th 1866.  The jury returned an assessment of damages from which the plaintiff appealed.

The case was finally tried, March 7th 1871, before Pearson, P. J., of the 12th District.

The only question decided in the Supreme Court arose upon the construction of the grant under which the plaintiff claimed.

The plantation of the plaintiff was part of what originally was a much larger tract, on which were a " fulling-mill," dam and race; the original owner divided it, the portion on which the mill was located being one division, the portion on which were the dam and the principal part of the race being another; the latter division is now the plaintiff's plantation.  The natural watercourse for some distance below the dam also passes through the plaintiffs' land.

The dam and race so divided the part of the land which was not granted with the mill and which was now the plantation of the plaintiff, as to cut off one part of it from access to the other, and deprive that part entirely from the use of water; the dam and race being between the part thus cut off from water and the part of the stream which passed through his land below the stream.

The borough of West Chester constructed works at about the upper part of the dam for the purpose of diverting the water for use of the town; they then purchased " the fulling-mill" tract.

The rights of the respective parties were as follows :—

[Hannum *v.* West Chester.]

" The plaintiff's farm was part of a tract containing 353¼ acres, patented October 13th 1735, to David Davis.

" By deed of the 14th June 1742, recited in the subsequent deeds, David Davis and wife, in consideration of natural love and affection to their son, Ellis Davis, &c., conveyed to him 106 acres of the same tract lying on its easternmost side and extending the whole breadth of the tract from north to south, with a fulling-mill thereon, and the race or watercourse thereunto belonging, and the bank to contain one perch in breadth. This deed does not refer to a dam.

" David Davis afterwards died intestate, seised of the remainder of tract, leaving eight children, Ellis Davis above named being one ; in 1755, these children conveyed their undivided interests in this remainder to Ellis, who thus became the owner of the whole of the original tract.

" He died intestate, seised of the original tract, leaving nine children, viz. : Ellis Davis (the second), who was the eldest, George Davis and seven others. On the 15th of the Fifth month 1787, Ellis Davis (who under the intestate laws then existing, was entitled to two shares), with his wife conveyed to his brother, George Davis, another of the heirs, his share in the fulling-mill tract as containing 100 acres, 'together also with their two full equal undivided tenth parts of the mill-dam and race on the several courses as they now run, and have heretofore been in use for the mills through the upper plantation, late of Ellis Davis, deceased (of which said upper plantation with the appurtenances, the aforesaid Ellis Davis and Jane his wife, party to these presents, being seised in fee, to and in two full equal undivided tenth parts thereof), and all the land now drowned and occupied by said dam and race, or that has been drowned by the same, with the full and uninterrupted right and use of all the water falling into the said dam and race, to be conveyed along the same, and privilege to dig on the banks to repair small breaches, to pass and repass with workmen, teams, carts or other carriages to haul stone, &c., to and from the said described tract, &c., to repair and cleanse the said dam and race, or either of them as occasion may require; likewise each and every of their several equal undivided one-tenth part of a certain water and watercourse running through the upper plantation used on the north side of the meadow, two days in every week for the use of the said George Davis on the meadow of the hereby granted premises, the said George Davis, his heirs and assigns, being at a proportionable part of the expense of procuring and bringing the water through the plantation late of Ellis Haines, now John Wagner, as heretofore has been in use. Also, the full right of the said Ellis Davis, and Jane his wife, of and in a small spring of water and dam, heretofore in use on the south side of the meadow, issuing on and out of the said upper planta-

[Hannum *v.* West Chester.]

tion, to be solely used by the said George Davis, for the benefit of the hereby granted premises, with the privilege to cleanse and repair said dam and watercourse as occasion may require.   To have and to hold the said full, equal and undivided tenth part of and in the said described messuage, &c., and all other the hereditaments and premises hereby granted, or mentioned to be granted with the appurtenances, unto the said George Davis and his heirs, to the use of him, the said George Davis, his heirs and assigns for ever.

"On the 13th day of the Sixth month 1789, George Dunn and wife, &c., the other heirs of Ellis Davis (second), conveyed their interest in the mill tract to George Davis, with the same clauses as to the dam, race, &c., as those above stated, except that as to the small spring and dam.

"On the 23d of May 1791, the heirs of Ellis Davis (first) conveyed 68 acres on the south side to Isaac Haines; and on the same day, the same heirs, including George Davis, who was then owner of the fulling-mill tract, conveyed the remainder (that now owned by Hannum, the plaintiff) to Ezra Hoopes, with the following exception: 'Except a privilege conveyed to the said George Davis, by the grantors to these presents, in their indenture to him, bearing date the 12th day of Sixth month, A. D. 1789, viz. : their rights to the mill-dam and race or watercourse, as they now run, and have heretofore been in use for the mill, and all the land now drowned and occupied by said dam and race, or that has usually been drowned by the same, with full and uninterrupted right and use of all the water falling into the said dam and race, to be conveyed along the same, and privilege to dig on the banks to repair small breaches, to pass and repass with workmen, teams, carts and other carriages, to haul stone, &c., to and from the plantation of the said George Davis, to repair and cleanse said dam and race, or either of them as occasion may require, with the least damage possible, &c.'

"Ezra Hoopes, by his will proved in 1811, devised this plantation to his sons Curtis Hoopes and Moses Hoopes; and in 1812 Moses Hoopes conveyed his interest to Curtis Hoopes.

"On the 13th of April 1853, Curtis Hoopes conveyed the tract to Samuel Hannum, the plaintiff in error, 'subject to the privilege granted by George Dunn and wife, and others, by their indenture, bearing date the 13th day of the Sixth month, A. D. 1789, of the right to the mill-dam and race, or watercourse as they now run, and have heretofore been in use for the mills, and all the land drowned or occupied by said dam and race, or that has usually been drowned by the same, with full and uninterrupted right,' &c., as in the foregoing deeds."

The plaintiff's 4th and 5th points with their answers are as follows:—

20 P. F. SMITH—24

[Hannum *v.* West Chester.]

4. The plaintiff, as owner of the adjacent land, being in the use and enjoyment of the water as it flowed through the race, and the bed of the stream, at the time of the diversion by the defendants and since, they are liable to him for damages of such diversion, without regard to the right to the water of the mill-owner below him.

Answer : " Such, we conceive, would be the law if the plaintiff owned the land over which the water flowed; as he neither owns the land, nor has any claim to the water, except on sufferance of the landowners, he is not entitled to recover damages as a tenant in fee of the premises. For our opinion on this point, see the general charge, as an answer in the negative to this point."

5. The use of the water by the plaintiff is evidence of license to him by the lower mill-owner, as against any at least but the lower owner, thus to use the water, and if the jury believe that the defendants have interrupted that right, they are liable to him in damages.

Answer : " The conveyances under which the plaintiff claims, show that he had no right to use the water in the mill-race and dam. There is no pretence that he owned the soil under either, but used the water on sufferance of the mill-owner, in whom the right to both was vested, and who could at any time exclude the plaintiff therefrom, at his pleasure. He is not such an owner of the premises as is contemplated by the statutes giving damages, but could be prevented at any time by the owners of the premises, from running his cattle into the race or dam. He has not gained any right by usage or prescription as his title, which fully admits that of the lower owner, commenced in 1853, and the defendant took possession of the premises in 1857, and has held the same ever since, until lately. There is not such a length of time since the acknowledgment of the adverse title, as will raise a presumption, or from which we can presume a grant."

The defendant's 1st point and answer were :—

1. Samuel Hannum, the plaintiff, under the deeds in evidence, has no right to the use of the water of Chester creek running or falling into the dam or race on his property, and therefore can maintain no action for its diversion.

Answer : " This point is true as to the dam and race. Mr. Hannum has no right to the soil under either, or the water flowing over the same. He has a right to the water in Chester creek *below* the mill-dam."

After referring to the several deeds, the court charged : * * * " What is the effect of these several conveyances ? As we understand them, Hannum has no interest in, or right to the water in the dam or race, or the land under either. It is precisely the same as if the heirs of Davis had sold the strip of land out of their larger tract, and measured the same off by courses and distances,

and conveyed it with the mill; it is equally certain and binding; the land is conveyed according to the location of the race to the dam, and the water-right also. The land under the dam is conveyed according to the spread thereof, to the utmost margin as it then stood. There is no right to raise the dam an inch higher, or spread the race an inch wider, and it is not pretended that there has ever been any change in either since they were first built and dug, though each has perhaps been repaired from time to time to prevent leakage. It is entirely unlike the sale of a mere water-right, where the vendor would have an undoubted right as owner of the underlying soil, to use any portion of the water not required by the vendee, and consequently would be injured by its abstraction for the use of the borough. In this case the owner of the mill, race and dam, would have an unrestricted right to place a fence along each side of his race, and around his whole dam or pool, and keep Hannum and his stock out from the water entirely, as much as he could the cattle of any stranger. If Hannum used either the dam or the race as a watering-place, it was not by *right* but by *sufferance* only. * * * We are therefore of the opinion that Mr. Hannum is not the owner of either the land or water within the intention of the statute under which this proceeding commenced, so far as regards either the race or dam, and it is to that the attention of the witnesses has been mainly directed." * * *

The verdict was for the plaintiff for $572.

The plaintiff took a writ of error, and assigned amongst other errors the construction given by the court to the several deeds under which the plaintiff claimed his right.

*J. S. Futhey* and *P. F. Smith* (with whom was *G. F. Smith*), for plaintiff in error.—A liberal construction must be put upon the deed, *ut res magis valeat quam pereat;* words are subservient to the intention not the contrary, the purpose of construction being to find the meaning of the parties. Neither is too much regard to the natural and proper signification of words and sentences, to permit the simple intention of the parties from taking effect; words may be transposed contrary to their order to bring them to the intent of the parties: Shoenberger *v.* Lyon, 7 W. & S. 184, 192; 1 Sheppard's Touchstone, 86, 87; 4 Cruise's Digest, page 242, title *Deed* ch. 50, pl. 2, *et in nota;* 1 Burton on Real Prop. 164; Parkhurst *v.* Smith, Willes Rep. 327, especially at 332. So too words are to be interpreted according to the subject-matter: Co. Litt., 36 *a;* Sheppard's Touchstone 87; Broom's Maxims 241; Shurtz *v.* Thomas, 8 Barr 359; Thompson *v.* Gregory, 4 Johnson's Rep. 81; Inhabitants of Worcester *v.* Green, 2 Pickering 425; Rogers *v.* Stoever, 12 Harris 186.

Particular expressions are to be referred to the particular sub-

ject-matter, so that full and complete force may be given to the whole: Sheppard 87.

The meaning of the phrase is to be collected not from particular words, but from the context; not from particular parts, but from all the parts of the instrument together: Shoenberger *v.* Lyon, 7 W. & S. 184, 192. It matters not that the exception was of land in contemplation of law, if it was not of land in contemplation of the parties. There is no better way of construing an ancient deed, than by usage, for however general the words may be, it is to be construed by the manner in which the thing granted has always been used: Broom's Maxims 300.

*W. B. Waddell* and *W. Darlington,* for defendants in error.— Conjectural intentions are not to be set up in opposition to express words in a deed: Benson *v.* The Miners' Bank, 8 Harris 370; Baker *v.* McDowell, 3 W. & S. 360; Caldwell *v.* Fulton, 7 Casey 475; Jackson *v.* Vermilyea, 6 Cowen 677.

The opinion of the court was delivered, January 29th 1872, by

SHARSWOOD, J.—There is really but one question which arises on this record, the answer to which disposes of all the errors assigned. That question is, what is the proper construction of the deed of Ellis Davis to George Davis dated May 15th 1787? All the subsequent deeds down to that to the plaintiff of April 13th 1853, are substantially the same. The deed in question grants to George Davis " the mill-dam and race on the several courses as they now run * * * and all the land now drowned and occupied by said dam and race, or that has been drowned by the same with the full and uninterrupted right and use of all the water falling into the said dam and race." The subsequent deed from Ellis Davis to Ezra Hoopes conveyed his tract, excepting that thus previously granted to George. It is true that it is called a privilege, but with a reference in terms to the former deed, and a statement under a *videlicet,* of what is thus excepted in the same words as before stated. The plaintiff in error maintains that the grant was only of the right to use the mill-dam and race for the purpose of the mill of the grantee; that that was all he needed, and that to put any other construction upon the grant would be unreasonable, for it would be to cut the farm of the grantors into two parts without any access from the one part to the other. But the established canon of construction is *Quoties in verbis nulla est ambiguitas, ibi nulla expositio contrà verba fienda est.* It has accordingly been well observed that although a somewhat strained interpretation of an instrument may be admissible where an absurdity would otherwise ensue, yet if the intention of the parties is not clear and plain, but *in equilibrio* the words shall receive their more natural and proper construction: Broom's Legal Maxims 553. Both the arguments

[Hannum *v.* West Chester.]

based upon the word " privilege," and the fact that the description is under an " *una cum*," " together with," are met and answered by Caldwell *v.* Fulton, 7 Casey 475, where both these peculiarities existed.　Nor is it clear that there is any such unreasonableness in the grant as contended for, for if there was no other way of getting from one part of the farm to the other or to a public road or outlet, but by crossing the race, a way of necessity would result, and as the grantee stipulated that he should have " the full and uninterrupted right and use of all the water falling into the said dam and race, to be conveyed along the same," how could he be perfectly secure in this right and use without interruption unless he was the owner of the land drowned or covered by the water ?　We think, therefore, that the conclusion of the learned judge below upon the construction of these deeds was correct. . There is no other point which needs examination, and which is not fully met and answered in the charge and answers to the points.　Whether the instructions on the subject of the damages were in the abstract right or wrong, is immaterial as apart from the use of the dam and race to which as we have seen the plaintiff had no right; there was no evidence of any past injury for which damages could have been claimed.

Judgment affirmed.