# Gibbs *v.* Sweet, Appellant.

*Waters—Fishing—Deed—Trespass—Exclusive right.*

While at common law an action of ejectment will not lie for the possession of a pool or other piece of water by the name of water only, yet by a grant of a well defined pool or pond there passes to the grantee a right of fishing. When he who makes such a grant is the sole and absolute owner of the pond, and the grant is made without reservation, the right of the grantee to the fishery is exclusive. The proper remedy, under our present system of procedure for any interruption of or intrusion upon such a right, is an action of trespass.

*Deed—Waters—Pond—Title—Description.*

A grant by deed of a tract of land extending across the mouth of the outlet of a pond, and also "all of the said pond and lands adjoining thereto not conveyed in other deeds," includes all of the land in the entire tract, whether under or out of the water which had not by conveyances become detached from the tract of which the margin was a part.

Where the owners of a pond have conveyed the pond and the lands thereunder, the riparian rights become severed from the adjacent land, and it is not within the power of such owners subsequently to revive said rights in favor of other land not conveyed by executing a deed calling for the pond as a boundary.

*Waters—Lake—Adverse possession.*

Where the title to a lake and the land under it are distinct from that of the shore owner, adverse possession of the one can never give title to or right in the other.

*Easement—Fishing—Prescriptive right.*

In an action of trespass for wrongfully fishing in a pond, where it appears that the defendant owns no land near to the pond and makes no attempt to prescribe in a que estate, he cannot establish a prescriptive right to fishing in the pond by evidence that he had commenced to fish in the pond in 1862, and from that time down until 1895 he had fished there quite often in the summer time, sometimes three or four times a week, and had fished all over the pond, that nobody had ever interfered with him until within the year last named, that other persons had always fished there in the same manner, and that prior to 1895 he had never heard of any objection from the owners of the land.

Argued Jan. 15, 1902. Appeal, No. 4, Jan. T., 1902, by defendant, from judgment of C. P. Lackawanna Co., Sept. T., 1896, No, 690, on verdict for plaintiff in case of H. C. Gibbs v. Dewilton Sweet. Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Trespass for an alleged wrongful fishing in a pond.

The facts appear by the opinion of the Superior Court.

When defendant was on the stand he was asked this question :

" Q. Whether when you were fishing there the plaintiff or his predecessors, people who owned the property over there preceding him, whether you were fishing where they could have seen you? A. Yes sir; all the time; I don't think I was out of sight at any time from their residence."

Mr. Price : I object to that and ask to have it stricken out.

The Court : Let that be stricken out.

Exception noted for defendant and bill sealed. [1]

Defendant offers to prove by the witness on the stand and other evidence, actual, open, notorious and adverse to the plaintiff and his predecessors, possession of the land on the westerly side of said lake plotted in the name of J. S. Clarkson from 1870 to 1895. This for the purpose of establishing a basis for the legal inference that the present owner on the westerly side of said lake has the legal title to the land under the said lake to the center of the thread of the bottom of said lake.

Mr. Rice : It is objected to; it is essentially the offer already made.

The Court : The exception is sustained.

Exception noted for defendant, at whose request a bill is sealed. [2]

The defendant offers to prove by the witness on the stand and other evidence that Wm. Finn and his grantees were in actual, open, notorious and adverse possession of the strip of land mentioned in said deed from 1870 to 1895; this to be followed by evidence tending to show the defendant at the time of the fishing complained of was on water over the land described in said deed.

Mr. Price : The offer is objected to as incompetent, immaterial and irrelevant.

The Court : The objection is sustained.

Exception noted for defendant, at whose request a bill is sealed. [3]

The court charged as follows :

This is a suit brought by the plaintiff against the defendant

to recover damages from him on account of illegal fishing in Bassett pond, claimed by the plaintiffs to be their property. It has been mentioned to you that the particular fish caught in June, 1895, has no particular value in money, but that is not the real purpose of the suit. The real and substantial purpose of a suit of this kind, especially in the form that it has taken, is to establish a question of right, and the question for the court to decide is whether the defendant or really any other member of the public has the right to go up to Bassett pond and fish. We spent a great deal of time in taking documentary evidence, evidence of title; it began away back in 1794 or 1795; there were several warrants issued for several tracts of land, surveys made and patents issued, and a great number of deeds showing conveyances down through a hundred years, almost to the present time. Where the evidence is undisputed and where there is nothing for the jury to pass upon, it is the duty of the court to decide whether the plaintiffs in this case have a legal title to the land in dispute; in other words, to the land underlying the waters of Bassett pond; and after considering the documentary evidence in the case, in connection with the testimony of the surveyor, Mr. Stevenson, [I have come to the conclusion that the plaintiffs have made out a good, legal title to the land underlying the waters of this pond or lake.] [4]

The next question then is, what right has the defendant to fish upon this pond. [Of course it is a private pond,] [5] and it is just as much the property of the plaintiffs as if there were no waters there, as if it were just so many acres of land, and the defendant would have just the same right to enter into a field as he would to go upon the waters of the pond unless the law in some way or another has given him the privilege of fishing. Now therein comes the claim of the defendant. He says, " It is true that I have no title to the land under Bassett pond, although," he says, " I own a farm in the neighborhood, it does not even run to the shores of the pond," and therefore, he and his farm are strangers as far as the title is concerned to this land. And he would have no more right than you or I would have to go there fishing, any more than we would have to go upon the actual land of the plaintiffs and tramp upon it or disturb it in any way. [But the defendant says that he has been fishing there for a period of thirty years; that he began fishing

in 1862, and continued to fish every season when people do fish, in open daylight, upon the waters of this pond, and therefore that he has acquired what is known in the law as a prescriptive right to go upon the waters of that pond and fish, claiming that exercising the act of fishing year after year for a period of more than twenty-one years, the law has invested him with the right known as a prescriptive right and that right is based upon the presumption that some time in the past, more than twenty-one years before the beginning of this suit, that there was somebody connected with the title to the land under this pond, under the waters of the pond, had given him a grant or a legal privilege to fish, and that the law would presume that, for the reason that he has been fishing for so many years. I am not prepared to state that such is the law. I am satisfied that it is not the law in Pennsylvania,] [6] and I cannot find out that it is the law in any other state. It may be that a person owning a farm on the shore of this pond could, after exercising the act of fishing for twenty-one years or more, acquire such a prescriptive right as an incident in connection with his ownership of title to land that abuts upon the pond or that makes the pond one of the boundaries. I do not say so; my impression now is against even such a privilege as that to a party owning a farm; much less has a man, who has no farm going down to the shore of the pond, a right to acquire such a privilege as he claims he has acquired. I think it would be a dangerous doctrine for us to hold in this state and say, especially in this county, that every one of us can go year after year to a private pond, and because nobody interferes with us, we fish right along, and then after we have fished continuously for twenty-one years to say, " Hold on now, you can't stop us because we have got the right to fish, we have been fishing on this pond for twenty-one years," when maybe we have had the right to fish on account of the good-hearted kindness of the owner of the pond. I think such a doctrine is not law, and I certainly shall not hold it until I am compelled to by some higher court.

Verdict and judgment for plaintiff for six cents. Defendant appealed.

*Errors assigned* were (1–3) rulings on evidence, quoting the bill of exceptions. (4–6) Above instructions, quoting them.

*A. A. Chase,* for appellant.—Land cannot be conveyed by the use of no other description than by the name of a pool or a pond of water: Sharswood's Blackstone, book 2, p. 17; Challenor v. Thomas, Brownl. & Gold. 142; Jackson v. Halstead, 5 Cowen, 216.

At common law the owner of lands bordering upon unnavigable streams and bodies of water own the soil to the thread of the stream or pond in severalty, and not in common : Ingraham v. Wilkinson, 4 Pick. 268.

The boundary line of shore owners of nonnavigable lakes and ponds extends to the center thread of the lake or pond: Mitchell v. Smale, 140 U. S. 406 ; Stoner v. Rice, 121 Ind. 51 ; Ross v. Faust, 54 Ind. 471 ; Finley v. Hershey, 41 Iowa, 389 ; Turner v. Holland, 65 Mich. 453; Cobb v. Davenport, 32 N. J. L. 369 ; Gouverneur v. National Ice Co., 134 N. Y. 355 ; Hodges v. Williams, 95 N. Car. 331 ; Lembeck v. Nye, 47 Ohio, 336 ; Kirkpatrick v. Yates Ice Co., 45 Mo. App. 535 ; Braxon v. Bressler, 64 Ill. 492; Paine v. Woods, 108 Mass. 160 ; Ledyard v. Ten Eyck, 36 Barb. 102 ; Smith v. Rochester, 92 N. Y. 463 ; Forsyth v. Smale, 7 Biss. 201 ; Child v. Starr, 20 Wend. 149 ; Woodman v. Spencer, 14 Am. Law. Reg. 411 ; Klingensmith v. Ground, 5 Watts, 458 ; Ball v. Slack, 2 Wharton, 508 ; Coovert v. O'Conner, 8 Watts, 470 ; Cox v. Couch, 8 Barr, 154 ; Wood v. Appal, 63 Pa. 210.

The ownership of a part only of the land covered by the water is not sufficient to give to the whole water the distinctive character of private. The pond must be treated in its entirety. Either the whole or none is private : Reynolds v. Commonwealth, 93 Pa. 462.

A profit a prendre—as a rent issuing out of land—may be granted or prescribed for in gross or in fee : Tinicum Fishing Co. v. Carter, 61 Pa. 37.

A fishing place may be granted separate from the soil : Tinicum Fshing Co. v. Carter, 61 Pa. 37 ; Hart v. Hill, 1 Whart. 124.

Where one uses an easement whenever he sees fit, without asking leave and without objection, it is adverse, and an uninterrupted enjoyment for twenty-one years is a title which cannot be disputed. Such enjoyment, without evidence to explain how it began, is presumed to have been in pursuance of a full

and unqualified grant: Garrett v. Jackson, 20 Pa. 335; Pierce v. Cloud, 42 Pa. 102; Carter v. Tinicum Fishing Co., 77 Pa. 310; Carter v. Tinicum Fishing Co., 61 Pa. 21; Gehman v. Erdman, 15 W. N. C. 278; Messinger's Appeal, 109 Pa. 285; Esling v. Williams, 10 Pa. 126.

*S. B. Price,* with him *W. W. Baylor,* for appellee.—We think it is well established by authority that there can be no prescriptive right acquired to a fishery in a private pond, because the owner permits his neighbors to fish: Wheeler v. Winn, 53 Pa. 131; Cobb v. Davenport, 32 N. J. L. 369; Tilbury v. Silva, Law Rep. 45 Ch. Div. 98; Baylor v. Decker, 133 Pa. 173.

OPINION BY W. D. PORTER, J., April 28, 1902:

The appellant persisted in angling in plaintiff's pond after he had been requested to cease, and this action of trespass resulted. Two lines of defense were resorted to, viz: (1) that the plaintiff had not shown such title as would support the action; (2) that the defendant had by prescription acquired the right to fish in the pond. Bassett pond was a small unnavigable body of water located within the limits of two tracts of land title to which out of the commonwealth was shown under warrants and surveys in the name of Jonathan Hall and Richard Hall, respectively, and patents issued in pursuance thereof to their grantees. The plaintiff offered in evidence deeds and other assurances of record establishing a complete chain of title in fee simple from the grantees of the commonwealth to Orrin L. Hallstead and William Hartley, for 250 acres of these tracts, including the pond and all the land surrounding. The deed to Hallstead and Hartley was dated March 22, 1851, and duly recorded on September 16 of the same year. About this time the water of the pond was raised above its natural level by the erection of a dam across its outlet on the eastern side, but it does not appear that the waters were thus forced upon the lands of any other owner. Hallstead and Hartley, by deed dated September 26, 1859, and recorded on November 23, following, conveyed to David Letson a tract of land extending across the mouth of this outlet, and also "all of the said Bassett pond and lands adjoining thereto not conveyed in other deeds; together with the right to raise the water as high

as the dam would raise it on September 22, 1851." The defendant founds his objection to the title of the plaintiff in the alleged insufficiency of this description to vest any title to the pond in the grantee. The question intended to be raised is thus stated in the brief of the appellant: " Can land be conveyed by the use of no other description than the name of a pool or pond of water?" It might be sufficient for the purposes of this case to say, that while at common law an action of ejectment would not lie for the possession of a pool or other piece of water by the name of water only, yet by a grant of a well defined pool or pond there passes to the grantee a right of fishing: Blackstone's Com. Book II, 17 ; Coke on Littleton, 4, 5, 6. When he who makes such a grant is the sole and absolute owner of the pond, and the grant is made without reservation, the right of the grantee to the fishery is exclusive. The proper remedy, under our present system of procedure, for any interruption of or intrusion upon such a right is an action of trespass. The rights of David Letson and those who claim under him, however, are not thus limited, they acquired not only the right to use the water in the pond but title to the land which it covered. The grant was not only of the pond but of all the adjoining lands which had not in other deeds been conveyed by the grantors. The subject of this grant was lands, " Bassett pond and lands adjoining thereto," and while it is reasonable to presume that the pond contained water, the description of the property intended to be conveyed did not differentiate the land from the water : Swartz v. Swartz, 4 Pa. 353 ; Hannun v. West Chester, 70 Pa. 367. By the erection of the dam the pond had become an artificial body of water which was the property of the grantors, the designation in the grant was but descriptive of the uses to which the land was then devoted. Even if all reference to the pond had been omitted from the deed and the only words added to the description of the tract which extended across the mouth of the outlet had been, " and all lands adjoining thereto not conveyed in other deeds," the lands under the pond would have passed, for they were a part of the same tract, they adjoined it and had not been conveyed in any other deeds by the grantors. There can be no question that all the lands immediately above the margin of the water passed under this grant, and by the

terms of the grant the title to all the lands of the grantors which adjoined the lands at the margin, which would include all the lands in the entire tract, whether under or out of the water, which had not by conveyances become detached from the tract of which the margin was a part. The defendant offered in evidence no deed which tended to establish that the land under that part of the pond upon which he trespassed had been by Hallstead and Hartley conveyed to any other person at the time of the execution and recording of the deed to Letson. We must accept it as established that Letson was the owner of that part of the pond and the land under it. It is not disputed that D. C. Gibbs had acquired title to all the rights of Letson in the property.

The defendant offered in evidence a quitclaim deed from O. L. Hallstead to William Finn, dated March 13, 1874, and recorded on May 30 of the same year, which released to said Finn a strip of ground on the west side of the pond, designating it as all the land belonging to said Hallstead not heretofore conveyed, and calling for Bassett pond as a boundary. He then offered to prove that William Finn and his grantees had been in actual, open, notorious and adverse possession of the strip of land mentioned in said deed from 1870 to 1895. " This for the purpose of establishing a basis for the legal inference that the present owner of said tract, being a shore owner on the westerly side of said lake, has the legal title to the land under said lake to the center of the thread of the bottom of said lake." It is not necessary in this case to enter into an extended discussion of the rights of riparian owners in and under the adjacent waters. It must be accepted as settled in Pennsylvania that where the bed of a stream and the land adjoining are both owned by the same person and he makes a grant calling for the stream as a boundary, it shall in the case of large navigable streams extend to low watermark, and in case of creeks and small unnavigable rivers to the middle of the stream: Ball v. Slack, 2 Wharton, 508; Klingensmith v. Ground, 5 Watts, 458. Even if it were conceded that this principle applies to ponds or artificial bodies of water it has no application under the facts of this case. Whatever may be the rights of the riparian owner they are subject to his disposition as are other parts of his land, he may reserve them out of a grant, con-

vey them and retain the land, or by grant or devise sever one from the other: Carter v. Tinicum Fishing Company, 77 Pa. 310; Palmer v. Farrell, 129 Pa. 162. Hallstead and Hartley having in 1859 conveyed Lake Bassett and the lands thereunder, the riparian rights had become severed from the adjacent land, and it was not within the power of either of them to subsequently revive said rights in favor of the land by executing a deed calling for the pond as a boundary. The defendant's own testimony established that the plaintiff and those under whom he claimed had been in possession of the pond since 1862. He testified that David Letson owned and was in possession of the property now in question at that date, and there is not a scintilla of evidence tending to establish a possession of any part of the pond adverse to Letson and those who have succeeded to his title. Letson and his grantees by raising and maintaining the dam covered the lands with water, which was a distinct, visible, exclusive occupancy. The title to the lake and the land under it being distinct from that of the shore owners, adverse possession of the one could never give title to or right in the other. The defendant made no offer to prove adverse possession of any part of the pond. Proof of adverse possession of the land on the west side of the pond would have availed him nothing. " The mere ownership of a strip of shore gave no rights of ownership in the pond itself. Much less would it enable such shore owners to give others a license to fish there. The fact that a man is owner of an adjoining piece of property, be it land or water, does not confer a right to trespass on the land or water of his neighbor: " Baylor v. Decker, 133 Pa. 168; Caldwell v. Copeland, 37 Pa. 427.

The assertion of a right, acquired by prescription, of the defendant in common with others to angle and catch fish in plaintiff's pond was not supported by the evidence. The only land of which defendant was owner or lessee was situated at a considerable distance from the pond, and no attempt was made to prescribe in a que estate. There was no assertion that the right was appurtenant to some dominant tenement, and the right was an easement in gross personal to the grantee, if it had any existence. Mr. Justice SHARSWOOD said in discussing a prescriptive right to take fish in the waters of another: " That kind of user for twenty-one years and upwards, which may be

sufficient to raise a presumption of a grant of a mere easement will not support a claim for an interest in the land itself or its profits : Tinicum Fising Company v. Carter, 61 Pa. 29. And it was in the same case held that the evidence which might have been sufficient to support an easement had there been a dominant and servient tenement, if the plaintiff had prescribed in a que estate, did not warrant the submission to the jury of the question of the existence of an easement merely in gross. There is a certainty as to the owners and occupiers of the land of which the appurtenancy is predicated, which does not exist where the claim is in gross. Title by prescription has its foundation in the presumption of a grant arising from the long continued use or possession of some right of common or other profit or benefit to be taken from or upon the lands of another. The use must be such as to indicate that it is claimed as a right and is not the effect of indulgence or anything short of a grant. The evidence sufficient to create the presumption of a grant must vary according to the nature of the right asserted and the manner of its use. If I see the owner of an adjoining farm constantly crossing my land by an unvarying route to the highway, it may with reason be held that I should be presumed to know that it is done under a claim of right and that I should take measures to prevent such uninterrupted adverse use ripening into a good title from lapse of time. But if one having no connection with the title to any adjacent lands passes over occasionally, on what ground is it to be inferred that he does so under any pretence of title ? The maintenance of a way across lands leaves well defined marks, prevents the tillage of the soil and dominates the uses to which it may be devoted by the owner. Gunning in the fields and woodlands or fishing in the waters of a farmer may result in some trifling injury, but its effect upon his own dominion over his property is but slight. An owner may see the same sportsman year after year gunning in his fields or fishing in his streams, but he cannot reasonably be held, from that fact alone, bound to assume that it is done under a claim of right. The language of Mr. Justice SHARSWOOD is peculiarly applicable to this case : "Must a farmer see to it that every one who crosses his field to gun or fish asks his permission?" Tinicum Fishing Company v. Carter, supra. "As well might an angler, resorting constantly to

some shady spot on the bank of a stream, set up in process of time a presumptive right against the owner of the soil, of passage and fishery. Many a lover of the sport for more than a quarter of a century has pursued every season one of our mountain brooks for miles of its course for the speckled trout with which they abound." When the evidence which the claimant produces in support of his alleged right to an easement fully explains the manner in which the enjoyment began and is not sufficient to warrant a finding that the owner knew or ought to have known that the use was under a claim of right, the presumption of a grant does not arise: Garrett v. Jackson, 20 Pa. 334; Foulk v. Brown, 2 Watts, 209; Carter v. Tinicum Fishing Company, 77 Pa. 310. "An annual entry on another man's land to cut timber, feed cattle, hunt or fish, with the cultivation of a truck path in the summer, as incidental to the other pursuits, can never give title:" Baylor v. Decker, 133 Pa. 168.

This pond covered about fifty acres of land, and the water power which it afforded was used by the plaintiff in operating his mill. The defendant was permitted to testify fully as to the manner in which he had fished in the pond, and we will assume for the purposes of this case that the owners of the pond could see any person who fished there. The defendant testified that he had commenced to fish in the pond in 1862, and from that time down until 1895 he had fished there quite often in the summer time, sometimes three or four times a week, and had fished all over the pond; that nobody had ever interfered with him until within the year last named; that other persons had always fished there in the same manner, and that prior to 1895 he had never heard of any objections from the owners of the land. He further testified that, when he first began to fish there, David Letson owned and was in possession of the property; that he and Letson had always been very friendly, and that he had never heard of Letson objecting to any person fishing there, although he did know that Letson had objected to their using his wood that laid around the shore. Taking the testimony of the defendant as true he had at various times, extending over a period of thirty years, fished in the pond with the knowledge of the owners, with whom he had been upon friendly terms, without anything having been said as to whether he had any right to fish there or

not.   He fished with a rod and line, and there is no evidence
that he or any other party ever attempted to set up any other
device, for taking fish, in the pond or upon its margin.   He
did not even testify that he had fished there every summer,
the extent of the use as defined by him being that he had
fished there, "quite often in the summer time, sometimes
three or four times a week."   He did not say that he had
fished every summer, and his testimony may all be true, and
yet there might have been a period of twenty years when he
did not fish at all.   Conceding, however, that he fished there
every summer, there is nothing in his evidence which would
warrant a finding that the use was other than an indulgence.
There is nothing in his testimony which could have been held
to involve notice to the owners that he was fishing under a
claim of right until in the year 1895.   The owner at that time,
possibly because he may have stocked the pond with fish, saw
the defendant fishing and requested him to cease, whereupon
the defendant replied that he "had always fished there and
probably always should as long as he wanted to fish anywhere."
This was the first notice to the owner that the defendant as-
serted a claim of right.   This action was promptly brought
and the result reached was the proper one under the evidence.
All the specifications of error are dismissed and the judgment
is affirmed.