## DeStefano v. Meglio et ux.

*A. Schamban*, for complainant.

*H. E. Heine*, for respondents.

Bok, P. J., April 28, 1948.—This is a bill in equity. Plaintiff seeks to enjoin defendants from blocking or obstructing rainwater drainage from her balcony to their roof, and asks damages for injury already sustained from such obstruction. Defendants are counter-plaintiffs, seeking to enjoin plaintiff from availing herself further of the drainage, and also asking damages for injury already sustained from the flow of water.

Testimony was taken on such pleadings, on December 19th and 30, 1947. Requests were filed on March 29th and April 9, 1948.

### Findings of fact

1. Plaintiff has owned and occupied premises 1308 S. Broad Street, Philadelphia, Pa., since May 26, 1927. . . .

2. Defendants have owned and occupied premises 1310 S. Broad Street, Philadelphia, Pa., since July 1, 1939. . . .

3. 1308 S. Broad Street is four stories in height, and premises 1310 S. Broad Street, immediately adjacent thereto on the south side, is three stories in height.

4. On the front of the fourth floor of premises 1308 S. Broad Street, is a balcony running the full width

of the property and the south end of said balcony is at right angles to the common party wall between 1308 and 1310 South Broad Street.

5. A rain conductor, constructed of lead pipe, leads from the south end of said balcony into the aforesaid common party wall, goes through the party wall and makes its exit over the roof of premises 1310 S. Broad Street.

6. Excess rainwater accumulating on the aforesaid balcony of 1308 S. Broad Street flows through said lead pipe and is discharged on the roof of premises 1310 S. Broad Street.

7. Said lead pipe, used as a rain conductor, was inserted in the common party wall at the time of the construction of said party wall which forms the south end of the aforesaid balcony.

8. The aforesaid party wall, together with the aforesaid lead pipe, was constructed upwards of 40 years prior to the institution of this action.

9. The aforesaid lead pipe has been continuously used as a conductor of excess water on the aforesaid balcony for a period of upwards of 40 years prior to date of institution of this action.

10. Defendants were aware of the aforesaid lead pipe from the time of their occupancy of 1310 S. Broad Street, to wit, July of 1939, thence hitherto.

11. Defendants, without notice to plaintiff, contrived to interfere with the use of said pipe in March of 1946 but plaintiff removed the obstruction.

12. Defendants, without notice to plaintiff, completely obstructed the aforesaid pipe by hammering it and blocking the opening with cement, on or about August 27, 1947.

13. As the result of a heavy rainfall that took place a day or two subsequent to August 27, 1947, an accumulation of rainfall on the balcony of 1308 S. Broad Street was unable, as prior to August 27, 1947, to make its escape through the aforesaid lead pipe and seeped and flowed back into premises 1308 S. Broad

Street through the fourth floor front of the said property.

14. The water so flowing into premises 1308 S. Broad Street caused damage to the floors, walls, ceilings, and other portions of the fourth, third, and second floors of said premises.

15. The fair, reasonable, market value of labor and materials to repair the aforesaid damage is $1870.

16. Defendants refuse to permit the use of the said lead pipe as a conductor of excess rain water of the aforesaid balcony so as to discharge same over on to their roof as heretofore.

## Discussion

The question is whether or not plaintiff has an easement by prescription that enables her to discharge rain water through a pipe from her balcony on to her neighbor's roof, despite any damage it may cause him.

My conclusion is that she has the easement.

I visited the scene by crawling through an attic window, wading the balcony gutter, climbing the four-foot party wall, peering into the rainspout, examining the composition, slope, and contour of the Meglio roof, and getting quite dirty in the process.

Both parties have a comparatively cheap and easy way of correcting the situation, and it is a pity they could not agree upon one of them and share the expense before going to law about it. Plaintiff, granting she could clear under the building regulations, could run a conduit down the front of her building and discharge it into a drain under the sidewalk. Defendant could attach a rain pipe to the pipe in suit and lead it across his roof, which slopes the right way, to a rainspout at the rear of his property.

The basic legal position is well stated in Shinn et al. v. Rosenberger et al., 347 Pa. 504 (1943), as follows (p. 507):

"Title by prescriptions has its foundation in the presumption of a grant arising from the long continued

use or possession of some right of common or other profit or benefit to be taken from or upon the land of another. Accordingly, the use must be such as to indicate that it is claimed as a right and is not the effect of indulgence or anything short of a grant: Gibbs v. Sweet, 20 Pa. Superior Ct. 275, 284. Mere user, no matter how long continued, will not give title. In order to give title the right must not only have been enjoyed without interruption for twenty-one years, but the enjoyment must have been adverse to the rights of the owner of the land: Bennett v. Biddle, 140 Pa. 396, 404. Open, notorious and uninterrupted user for a period of twenty-one years will be presumed to have been in pursuance of a full and unqualified grant, in the absence of evidence of some license, indulgence or some special contract inconsistent with the right claimed: Pierce v. Cloud, 42 Pa. 102, 114. But where the evidence produced by the claimant in support of his alleged right to an easement fully explains the manner in which the enjoyment began and is not sufficient to warrant a finding that the owner knew or ought to have known that the use was under a claim of right, the presumption of a grant does not arise: Carter v. Tinicum Fishing Co., 77 Pa. 310, 315; Gibbs v. Sweet, supra, 285."

I believe that the pipe has been where it is since the plaintiff's building was erected, over 40 years ago. Her building is the higher of the two, and the pipe stuck out visibly. From defendants' own statement that they found it shortly after acquiring title and went there many times, at least once with their nine-year-old boy, to plug up the pipe, I am satisfied that the condition was open and notorious and continuous, easy of observation and access. The purpose of the pipe is obvious.

It has not been shown when defendants' building was erected, but the evidence of the age of plaintiff's building and of the pipe warrants the inference that

defendants' property was constructed with the pipe in plain view. The burden was therefore on defendants to show that the user was not adverse: Garrett v. Jackson, 20 Pa. 331 (1853). In this they have completely failed, for there is no evidence whatever that the use was permissive or that anyone had ever taken action against it until defendants did, long after the prescriptive period had run.

Secret burdens on land are of course not capable of being acquired by prescription and defendants' cases are all directed to that point. McKinney v. McCullough, 17 Phila. 395 (1885), involved a hidden connection with a chimney flue. Stille v. Simes, 16 Phila. 110 (1882), concerned an underground vault and a permissive use to start with. Underground sewers and subterranean drains were involved in Tremont v. Ford, 91 Pitts. L. J. 192 (1941); Cohn et al. v. Williams et ux., 60 D. & C. 221 (1947); Becker v. Rittenhouse, 297 Pa. 317 (1929); and Cavany et ux. v. Sherer et ux., 60 D. & C. 462 (1947).

The fact that the user causes damage to the servient tenement is of no moment.

In Warren v. Hunter, 1 Phila. 414 (1853), the discharge of waste from a mill into a stream was given a prescriptive right, even though it was a private nuisance and caused damage downstream.

In New York and Maryland, an easement of eaves-drip was held to be acquired by prescription: Neale v. Seeley, 47 Barbour 314 (N. Y., 1886); Cherry v. Stein, 11 Md. 1 (1857). Similarly in Louisiana, as to the flow of water from a roof which caused damage to the lower property: Vincent v. Michel, 7 La. 52 (1834).

The common-law view is well illustrated in the Massachusetts cases.

In Martin v. Simpson, 6 Allen 102 (Mass., 1863) a plaintiff, the roof of whose building was causing a flow onto defendant's wall, was denied recovery for damage

to his property resulting from the fall of defendant's wall on the ground of contributory negligence. The parts of the opinion hereinafter quoted are dictum, but the language, together with the cases above cited, indicate that an easement may be acquired by a user which causes damage and injury to the servient tenement. In Martin v. Simpson, the court said (p. 104):

"No one has a right, by an artificial structure of any kind, upon his land, to cause the water which falls and accumulates thereon in rain or snow, to be discharged upon land of an adjacent proprietor. Such an erection, if it occasions the water to flow, either in the form of a current or stream, or only in drops, works a violation of the adjoining proprietor's right of property, and cannot be justified, *unless a right is shown by express grant or by prescription.* . . . Among the urban servitudes to which land was subject by the civil law, and which could be acquired only like other easements in real property, were *stillicidium,* or the right to have water drop, and *flumen,* or the right to have it flow in a stream through a spout or conduit from a roof or other structure upon adjoining premises. But in the absence of any title to the enjoyment of such easement, it could not be exercised without a violation of the right of property in the land of the adjacent proprietor. And so it is at common law. Such a violation of right may be caused by extending the roof of a building beyond the line of separation between the two estates, or by constructing it in such a manner as to throw the water falling thereon by its own impulse and direction across the line, and thereby cause it to be discharged on the adjacent premises." (Italics supplied.)

Massachusetts is one of the States that follow the strict view that a property owner is absolutely liable for damage caused to adjoining property by reason of discharge of rain waters, and yet it was held in Carbrey v. Willis, 7 Allen 364 (Mass., 1863), that it was a

question for the jury as to whether there had been such an open and notorious user as to give a property owner an easement by prescription for drainage of water from his eaves onto his neighbor's property. To the same effect was the holding in Hooten v. Barnard, 137 Mass. 36 (1884), where it was said that a person defending an action of tort against him for damage to adjoining property from water discharged from his building, on the ground that he had an easement by prescription to flow over the adjoining land, had the burden of proving open, continuous, and adverse use of the land he claims.

There is credible evidence that plaintiff's property has been damaged as a direct result of defendants' stopping up the pipe, and that the damage amounts to $1870. Such damages can properly be awarded in an equity suit for an injunction: Gray v. Philadelphia & Reading Coal & Iron Co. et al., 286 Pa. 11 (1926).

Out of abundance of caution, it should be added that plaintiff may not substantially alter, enlarge, or increase the drainage already secured to her by prescription.

## Conclusions of law

1. The rain water conductor (lead pipe) has existed and has been in continuous, open, uninterrupted, exclusive and notorious use for over 40 years prior to this action. Such use was also hostile and non-permissive.

2. Plaintiff, as well as her predecessors in title, to wit, Walter C. Hoban et ux., who acquired title in 1918, and transferred title to plaintiff in 1927, continuously used said pipe for the discharge of excess rain water from the balcony of 1308 S. Broad Street over to the roof of 1310 S. Broad Street, to wit, from 1918 to 1947.

3. The continuous, uninterrupted, exclusive, notorious, and open use of said rain water conductor for a period over 21 years created an easement in favor of

premises 1308 S. Broad Street against premises 1310 S. Broad Street.

4. Defendants wrongfully interfered with the use of said easement on or about March, 1946.

5. Defendants wrongfully interfered with the use of said easement on or about August 27, 1947.

6. Defendants, by their wrongful and unreasonable action, on or about August 27, 1947, were responsible for the resulting damage to 1308 S. Broad Street by the accumulated rain water that flowed back into the aforesaid 1308 S. Broad Street from the balcony and flooded the interior thereof.

7. Defendants have no right to interfere with plaintiff's use of said rain water conductor lead pipe for the discharge of excess rain water from the balcony of 1308 S. Broad Street over and on to the roof of 1310 S. Broad Street and should be perpetually restrained from so doing.

8. Defendants are obligated to pay to plaintiff the sum of $1870 as damages to those portions of 1308 S. Broad Street damaged as the result of defendants' wrongful action.

### Decree nisi

And now, April 28, 1948, it is ordered, adjudged, and decreed as follows:

1. Defendants, their successors and assigns, are permanently enjoined from blocking or obstructing the drainage in suit;

2. Defendants shall pay to plaintiff the amount of her damages, namely, $1870;

3. Defendants to pay costs.

### Opinion sur exceptions

BOK, P. J., June 3, 1948.—Defendants have not added at argument anything not already disposed of by the adjudication, to which reference is made for discussion of the pertinent authorities.

We have no quarrel with defendants' statement of the law. Their quarrel with us is that the rainspout cannot be the subject of an apparent easement. This may be considered a mixed question of fact and law. The authorities have classed underground sewers and concealed drains as not capable of becoming apparent easements; mere user, no matter how long, creates no rights, as a matter of law. But rainspouts have not been so classified, except in the foreign jurisdictions cited in the adjudication, and there they have been held capable of creating easements.

The Massachusetts case, Martin v. Simpson, 6 Allen 102 (Mass. 1863), justifies this conclusion by the common-law rights of stillicidium and flumen. Easements by eavesdrip and flow have reason to exist in urban communities, where individual houses are built in solid rows and may differ in height, construction and detail. It cannot be assumed that all houses in a block are built at the same time, and the inference has been made from evidence and observation that 1308 is the older of the two houses in the instant case. Defendants' house, at 1310, was therefore constructed with the spout in plain view, and the slope of its roof to the west is some evidence that the discharge of rain from the spout was taken into account, as is the fact that the spout extends through and beyond the party wall.

Nor does mere inconvenience in reaching the rainspout determine its legal character. The condition of a man's roof is of obvious concern to him, and by defendants' own statement, they were on theirs 20 times since 1939. The spout is open to the air, and its operation is continuous and notorious in every rain: in our opinion it differs materially from a concealed drain or an underground sewer.

There are certain cases that deal with fairly analogous cases, but they do not involve easements so much

as negligence or deliberate drainage without the elements of an easement.

In Trimmer v. Berkheimer, 61 Pa. Superior Ct. 269 (1915), it is flatly stated that no one may accumulate and carry water from his roof on to his neighbor's lot, and the opinion cites Rielly v. Stephenson, 222 Pa. 252 (1908), in support. In the Rielly case, however, the court said:

"It is clearly settled, however, first, that he may not obstruct a natural channel for the flow of the water, *or a channel that has acquired the character of an easement. . . .*"

The Trimmer case also quotes 3 Blackstone Com., pp. 216-217, as saying that an overhanging roof with spouting attached which discharges water on a neighbor's land is a nuisance. The exact quotation in Blackstone is: "If a man builds a house so close to mine that his roof overhangs my roof, and throws the water off his roof upon mine, this is a nusance (sic), for which an action will lie." This is the reverse of our situation, where the spout exists on the older house and the newer house was obviously built to accommodate itself to it.

Gould v. McKenna, 86 Pa. 297 (1878), is another example of a defendant building his house in such a way as to throw water against plaintiff's wall, and was enjoined.

In Wahl v. Vetter, 38 Pa. Superior Ct. 234 (1909), no easement was involved. Defendant's rainspout parted from its base and discharged water into an alley and on to plaintiff's property: he was held liable because he didn't fix the break.

The mere fact that there is no mention of an easement in the deed or title policy is not important, for easements can arise by implication in watercourse cases. See Sharpe, admr. of Allison, v. Scheible, 162 Pa. 341 (1911).

Defendants cite Deeb v. Ferris et al., 127 Pa. Superior Ct. 489 (1937), to show that no adverse user

has been proved. That case concerned a sewer, and there was conflicting evidence of its original construction and of permissive use. In the instant case, the rainspout shows its own adverse character, since it goes through the party wall and stuck out for several inches over defendants' property. It is a different matter from the use of a path across another man's land, where the passage of people constitutes the use. Here the pipe itself was a fixed trespasser, and the point is therefore not one of proving use but of establishing the open, apparent, and notorious character of the pipe—which we think has been done.

While the chancellor did not make a direct finding of fact as to adverse user, it follows from what has just been said that this is more a question of law, and as such it appears in the chancellor's first conclusion.

The exceptions are dismissed.